## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

## COMMONWEALTH OF MASSACHUSETTS and the Barnstable County Retirement Association, Defendants.

### Civ. A. No. 89–1959–H.

United States District Court,
D. Massachusetts.

April 17, 1992.

Michael J. O'Brien, E.E.O.C., N.Y. Dist. Office, New York City, for E.E.O.C.

Walter M. Foster, Pierce O. Cray, Atty. General's Office, Boston, Mass., for Com. of Mass.

James H. Quirk, Jr., Quirk and Chamberlain, P.C., Yarmouthport, Mass., for Barnstable County Retirement Ass'n.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

The plaintiff the Equal Employment Opportunity Commission ("EEOC") brings this action for injunctive and monetary relief against the defendants the Commonwealth of Massachusetts and the Barnstable County Retirement Association ("BCRA"). The plaintiff alleges that Mass. Gen.L. ch. 32, § 90F, which requires all Group 1 employees [1] of the Commonwealth over age seventy to take and pass, at their own expense,[2] an annual physical examination in order to continue employment, violates Section 4(a) of the Age Discrimination in Employment Act of 1967 ("ADEA"). 29 U.S.C. § 621, *et seq.* The plaintiff claims that the Commonwealth is liable for enacting and promulgating the statute and that the BCRA is liable for enforcing the statute. The plaintiff and defendants agree that no facts are in dispute and all parties have moved for judgment as a matter of law.

General Laws Chapter 32, Section 90F, the statute at issue here, states in full:

Any member in service classified in Group 1, or any other person who would be classified in Group 1 except for the fact that he is not a member, shall continue in service, at his option, notwithstanding the fact that he has attained

---

1. "Group 1 employees" is defined in Mass. Gen.L. ch. 32, § 3(2)(g) as follows:
   Officials and general employees including clerical, administrative and technical workers, laborers, mechanics and all others not otherwise classified.

2. Mass.Gen.L. ch. 32, § 90J was enacted during 1990 and modifies the provisions of Section 90F. Section 90J states, in part:

In any city, town, county, district or authority retirement system accepting the provisions of this section, the retirement system shall pay the costs for the annual physical and mental examination of any member serving beyond age seventy pursuant to the provisions of Section 90F.

age seventy; provided, however, that he is mentally and physically capable of performing the duties of his office or position. Such member shall annually, at his own expense, be examined by an impartial physician designated by the retirement authority to determine such capability. No deductions shall be made from the regular compensation of such member or other person under the provisions of this chapter for service after he has attained age seventy and upon retirement such member or other person shall receive a superannuation retirement allowance equal to that which he would have been entitled had he retired at age seventy.

Section 90F was enacted in 1977. Since its enactment, Section 90F has required annual physical examinations for state employees over the age of seventy.

> Section 4(a) of the ADEA states, in part: It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's·age ...

29 U.S.C. § 623(a)(1). "The term 'employer' is defined to include 'a state or political subdivision of a state.'" *Gregory v. Ashcroft*, — U.S. —, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991); 29 U.S.C. § 630(b)(2). Thus, the ADEA applies to both the Commonwealth and the BCRA.

When originally enacted in 1967, the ADEA protected only those employees between the ages of forty and sixty-five and in 1978 the protected age was raised to seventy years. *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 1058, 75 L.Ed.2d 18 (1983). In 1986, the age limit was completely eliminated so that all employees over forty years of age (except those expressly excluded from coverage) would be protected by the ADEA. Thus, when Section 90F was enacted in 1977, its age limitation of seventy years complied with the ADEA and even exceeded its age requirement. It was only after Congress amended the ADEA and lifted the ceiling on the age

requirement in 1986 that Section 90F became arguably in conflict with the ADEA.

The United States Supreme Court has held that Congress, pursuant to the Commerce Clause, may extend the ADEA to cover state and local governments. *EEOC v. Wyoming*, 103 S.Ct. at 1064. It should be noted, however, that the Supreme Court is mindful of the need to preserve the sovereignty and independence of state governments. *See Gregory v. Ashcroft*, 111 S.Ct. 2399–2401. In *Gregory v. Ashcroft*, the Court quoted James Madison who noted:

> The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the state governments are numerous and indefinite.... The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.

*Id.*, at 2399, quoting The Federalist No. 45, pp. 292–293 (C. Rossiter ed. 1961) (J. Madison). The Supreme Court has also acknowledged the need to balance the powers of the state and national governments stating:

> In a single republic, all the power surrendered by the people is submitted to the administration of a single government; and the usurpations are guarded against by a division of the government into distinct and separate departments. In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the right of the people. The different governments will control each other, at the same time that each will be controlled by itself.

*Id.*, at 2400, quoting The Federalist No. 51, p. 323. (J. Madison).

As stated in *Gregory v. Ashcroft*, 111 S.Ct. at 2400:

> It is obviously essential to the independence of the States, and to their peace

and tranquility, that their power to prescribe the qualifications of their own officers ... should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States. *Taylor v. Beckham*, 178 U.S. 548, 570–571, 20 S.Ct. 890, 898, 44 L.Ed. 1187 (1900).

In an effort to preserve our federal system of government, the Supreme Court has indicated that "Congress should make its intention 'clear and manifest' if it intends to preempt the historic powers of the states." *Gregory v. Ashcroft*, 111 S.Ct. at 2401.

> In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.

*Id.*, quoting *United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971).

The court in *Gregory v. Ashcroft* concluded that it was ambiguous whether Congress intended to include state judges within the protection of the ADEA. *Gregory v. Ashcroft*, 111 S.Ct. at 2404. Absent a plain statement from Congress that judges are included, the Court declined to so find. *Id.*

In the instant case, it is unambiguous that the Group 1 employees are covered by the ADEA. However, an ambiguity arises in considering the effect of the 1986 congressional amendment of the ADEA. While it is clear that the Congress intended to prohibit all forms of employment discrimination against those over forty years of age, it is not clear that it intended to limit employer-states' ability to assess the fitness of their employees. More specifically, it appears ambiguous, and even unlikely, that Congress intended to outlaw a method of assessment utilized by a state government which requires annual medical examinations for its employees at the age of seventy. While Section 90F does specify a particular age as a triggering event, it is a reasonable method to enable state employees to continue working while at the same time assuring their competency. Indeed, alternative methods of either requiring all state employees or not requiring any state employees to undergo examinations would prove costly and unsafe, respectively.

To undergo an annual medical examination is a usual and reasonable practice for all persons at least by the age of seventy, if not years before that age, and is a practice very conducive to the health and well-being of those employed by state government as well as by society at large.

As cited in *Gregory v. Ashcroft*, 111 S.Ct. at 2401:

> "[I]t is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides" this balance (of federal and state powers).

> *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, at 243, 105 S.Ct. 3142, at 3147, 87 L.Ed.2d 171 (1985).

The Court, therefore, concludes that if it is Congress' intention to require federal courts to declare an Act of the State Legislature void, especially an Act relating to the qualifications of state employees which was lawful and an eminently reasonable expression of state power when enacted, then under the historic and fundamental principle of state sovereignty the Congress must manifest that intention expressly and clearly and not leave it to the judiciary to indulge in judicial legislation to override the balance of federal and state powers. Here the Congress has failed to make its intent "clear and manifest."

Plaintiff's Motion for Summary Judgment is denied. Defendants' Motion for Summary Judgment is granted.

SO ORDERED.