**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, Appellant,**

v.

**COMMONWEALTH OF MASSACHUSETTS, et al., Defendants, Appellees.**

No. 92–1696.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1992.

Decided March 4, 1993.

Lamont N. White, Atty., with whom Donald R. Livingston, General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Asst. General Counsel, Washington, DC, were on brief for appellant E.E.O.C.

Steven S. Zaleznick, Cathy Ventrell–Monsees, and Thomas W. Osborne, Washington, DC, on brief for American Ass'n of Retired Persons, amicus curiae.

Pierce O. Cray, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, MA, was on brief for appellee Com. of Mass.

James H. Quirk, Jr., Yarmouthport, MA, for appellee Barnstable County Retirement Ass'n.

Before BREYER, Chief Judge, HIGGINBOTHAM,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

* Of the Third Circuit, sitting by designation.

**A. LEON HIGGINBOTHAM, Senior Circuit Judge.**

Massachusetts requires state and local officials and general employees who are seventy years old or older to take and pass a medical examination as a condition of continued employment. The issue on this appeal is whether such a requirement violates the Age Discrimination in Employment Act (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 *et seq.* (1990). We hold that it does.

### I.

In 1977, Massachusetts enacted Chapter 32 of Massachusetts General Laws to regulate its retirement systems and pensions. One component of Chapter 32, Section 90F, requires Group 1 employees of the Commonwealth and its political subdivisions who are seventy years of age or older to pass an annual medical examination as a condition of continued employment.[1] Group 1 employees are "[o]fficials and general employees including clerical, administrative and technical workers, laborers, mechanics and all others not otherwise classified." Mass.Gen.L. ch. 32, § 3(2)(g) (1992). Under the regulations enacted pursuant to section 90F, no later than 120 days before the last day of the month when a Group 1 employee will reach the age of seventy, the retirement board of which he or she is a member notifies him or her of the retirement benefits to which he or she would be entitled if he or she retired at the age of seventy. In order to remain in employment after the age of seventy, the employee must complete an application and submit to a medical examination by a physician designated by the board. Upon receipt of the report of the physician, the retirement board votes to decide whether to grant the application for permission to continue in service. If the application is granted, the employee must repeat the process each year. If the application is denied, the employee is retired on the last day of the month of his or her birth. Mass.Regs.Code tit. 840, § 11.01–11.02 (1992).

Barnstable County Retirement Association (BCRA) is one of the 106 public retirement systems governed by § 90F. In 1988 the BCRA required Mary Cavender, a librarian employed by a town in Massachusetts, to pass a medical examination in order to continue her employment with the town. She passed the medical examination and was allowed to continue her employment. No employees have been forced to retire since § 90F has been in effect.

On September 9, 1989, the Equal Employment Opportunity Commission (EEOC) brought suit against Massachusetts and the BCRA. The EEOC alleged that the requirements of § 90F that Massachusetts state and local employees aged seventy or older take and pass an annual medical examination as a condition of continued employment was violative of, and hence preempted by, § 4(a) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). Section 4(a) provides:

> It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such indi-

---

1. Section 90F provides in its entirety:

   Any member in service classified in Group 1, or any other person who would be classified in Group 1 except for the fact that he is not a member, shall continue in service, at his option, notwithstanding the fact that he has attained age seventy; provided, however, that he is mentally and physically capable of performing the duties of his office or position. Such member or other person shall annually, at his own expense, be examined by an impar-

tial physician designated by the retirement authority to determine such capability. No deductions shall be made from the regular compensation of such member or other person under the provisions of this chapter for service after he has attained age seventy and upon retirement such member or other person shall receive a superannuation retirement allowance equal to that which he would have been entitled had he retired at age seventy. Mass.Gen.L. ch. 32, § 90F.

vidual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

Following discovery, all parties moved for summary judgment. The EEOC argued in its motion that § 90F was discriminatory on its face and that defendants had not established a justification for using age as a factor in determining who would be required to take and pass a medical examination as a condition of continued employment. Massachusetts' answer in its motion for summary judgment was twofold: first, it argued that § 4(a) of the ADEA was not applicable to the dispute because § 90F was not preempted by the ADEA; second, and in the alternative, Massachusetts argued that § 90F did not violate the ADEA because concerns over the fitness of employees, rather than age, was the basis of the statute.

On April 17, 1992, the district court granted defendants' motions for summary judgment, denying the EEOC's motion. 788 F.Supp. 106. The court reasoned that the regulation of its employees has traditionally been one of the historic powers of the state. According to the court, the Supreme Court held in *Gregory v. Ashcroft,* — U.S. —, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), that Congress should make its intention clear and manifest when it intends to preempt the historic powers of the state. In the view of the court, Congress, in enacting the ADEA, did not make it clear and manifest that it intended to "limit employer-states' ability to assess the fitness of their employees." Moreover, the court continued, the practice of requiring employees seventy years of age or older to undergo an annual medical examination "is a practice very conducive to the health and well being of those employed by state government as well as by society at large." Thus, the court concluded, § 90F is not preempted by, and is not violative of, the ADEA, and for the court to hold otherwise would be "to indulge in judicial legislation to override the balance of federal and state powers."

The EEOC now appeals the district court's grant of summary judgment. The EEOC requests that we reverse the grant of summary judgment in favor of appellees and that we remand directing the district court to enter summary judgment in its favor. The EEOC makes three main arguments in support of its appeal. First, the EEOC reiterates that § 90F violates the ADEA on its face. Second, the EEOC maintains that age, and not concerns over employee fitness, is the basis for § 90F. Finally, the EEOC argues that § 90F does not qualify for the bona fide employee benefit exception of the ADEA.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). We exercise plenary review of summary judgment dispositions. *Olivera v. Nestle Puerto Rico, Inc.,* 922 F.2d 43, 44–45 (1st Cir.1990). The facts of this case, as recounted above, are not in dispute. So, we turn first to the issue of whether § 90F is preempted by the ADEA.

## A.

Congress has the power to preempt state legislation under the Supremacy Clause of Article VI of the Constitution. Federal preemption law recognizes two types of preemption, express and implied. *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *Wisconsin Publ. Intervenor, et al. v. Mortier,* — U.S. —, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991); *see also Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988). Express preemption occurs when Congress states in the text of legislation that it intends to preempt state legislation in the area. In the absence of such a specific statement, a federal statute may also preempt by implication a state statute. The United States Supreme Court has identified the circum-

stances under which such implied preemption may occur:

> In the absence of explicit statutory language, however, Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the "object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." Finally, *even where Congress has not entirely displaced state regulation in a particular field, state law is preempted when it actually conflicts with federal law.* Such a conflict will be found " 'when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' "

*Schneidewind,* 485 U.S. at 299–300, 108 S.Ct. at 1150–1151 (citations omitted) (emphasis added).

Before the district court the EEOC argued, and on appeal it reiterates, that § 90F actually conflicts with § 4(a) due to the impossibility of complying with both statutes. Specifically, the EEOC maintains that, since only employees who are seventy years of age or older are required to take and are forced to retire if they fail an annual medical examination, § 90F conflicts with § 4(a) of the ADEA providing that it is unlawful for an employer "to discharge ... or otherwise discriminate against any individual with respect to his ... terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).

The district court rejected the EEOC's argument, finding that in ADEA cases, Congress must expressly state an intention in order for courts to find federal preemption. The court determined that the recent Supreme Court decision in *Gregory v. Ashcroft* had changed the standards for resolving conflicts between local and federal government, deferring to state sovereignty. According to the court, "in an effort to preserve our federal system of government, the Supreme Court has indicated that Congress should make its intention clear and manifest if it intends to preempt the historic powers of the states." *quoting Gregory v. Ashcroft,* —— U.S. at ——, 111 S.Ct. at 2401. Under this new standard, the district court concluded that the ADEA is ambiguous as to whether the statute was intended to apply to such state legislation as § 90F: "[I]t appears ambiguous, and even unlikely, that Congress intended to outlaw a method of assessment utilized by a state government which requires annual medical examinations for its employees at the age of seventy."

It is true that the *Gregory* Court was unwavering in its desire to protect state sovereignty and principles of federalism. *Id.* at ——, 111 S.Ct. at 2399. However, its reasoning and holding were far more narrow and limited than the broad and sweeping interpretation made by the district court. In *Gregory,* the United States Supreme Court rendered a decision on the effects of the ADEA on the Missouri Constitution which required mandatory retirement of judges.[2] Mo. Const. art. V, § 26. The relevant clause of the ADEA provided:

> The term "employee" means an individual employed by any employer except that

---

**2.** Three years before the Supreme Court decided *Gregory,* the First Circuit adjudicated precisely the same issue. *EEOC v. Massachusetts,* 858 F.2d 52 (1st Cir.1988). In that case, the court had to determine the effect of the 1987 amendments to the ADEA on a provision of the Massachusetts Constitution which made age 70 the mandatory retirement age for all state judges. The court affirmed the district court's determination that the Act did not override the state constitutional provision, finding that the state's judges fell within the policy-making exception to employees protected by the ADEA, 29 U.S.C. § 630(f). The court even relied on the same rationale of respect for principles of sovereignty, as did the Court in *Gregory:* "Without question, the tenure of state judges is a question of exceeding importance *to* each state, and a question traditionally left to be answered by each state. Any federal encroachment on a state's freedom of choice in this area, therefore, strikes very close to the heart of state sovereignty." *EEOC,* 858 F.2d at 54.

the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f). Due to the method of selection of state judges in Missouri, it was unclear whether they were employees within the meaning of § 630(f).

█ It was ultimately the ambiguity of the judges' status as employees or policymakers which the Court found fatal to their capacity to be protected by the ADEA. Because Missouri judges were subject to retention elections, they could be construed as elected officials, thus excluded from the ADEA. It was unclear, however, whether state court judges were state officials on the "policy-making level." The *Gregory* Court aptly held that, where provisions are ambiguous *and* state sovereignty is at issue, courts should reason carefully when making determinations as to preemption. *Gregory*, —— U.S. at ——, 111 S.Ct. at 2401. "Congressional interference with this decision of the people of Missouri, defining their constitutional officers, would upset the usual constitutional balance of federal and state powers. For this reason, 'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' this balance." *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (determining whether federal statute abrogated sovereign immunity of states under the 11th Amendment)). Based on that reasoning, the *Gregory* Court concluded that the ADEA did not preempt the Missouri Constitution's mandatory requirement for judges. *Id.* —— U.S. at ——, 111 S.Ct. at 2408.

Here, the district court misinterpreted the significance of the Court's reliance on principles of federalism and respect for state sovereignty. The Missouri constitutional provision was concerned, not with

regulating health care, but with ensuring the qualifications of the highest state officials. "The[ ] cases [cited] stand in recognition of the authority of the people of the States to determine the qualifications of their most important government officials." *Gregory*, —— U.S. at ——, 111 S.Ct. at 2402; *see also EEOC v. Massachusetts.*, 858 F.2d 52 (1st Cir.1988), *discussed supra* note 3. Relying on *Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), the Court recognized that *Gregory* was part of the body of decisions which involve the Court in adjudicating "the unique nature of state decisions that 'go to the heart of representative government.'" *Gregory*, —— U.S. at ——, 111 S.Ct. at 2401. The Court made it clear that its deference arises not from a disdain for preemption doctrine in the context of the ADEA, but rather because:

the case concerns a state constitutional provision through which the people of Missouri establish a qualification for those who sit as their judges. *This provision goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity.* Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign.

*Id.* at ——, 111 S.Ct. at 2400 (emphasis added).

Thus, while *Gregory* refused to find the state Constitution preempted by the ADEA, the opinion was unequivocally clear in the narrowness of its holding. At no point did the Court suggest that all state regulations of public employees are questions at the heart of state sovereignty. Nor did it suggest that *Gregory* would be controlling on the federal preemption doctrine where there was not any ambiguity in the language of the statute. The Court stated: "The ADEA plainly covers all state employees except those excluded by one of the exceptions. Where it is unambiguous that an employee does not fall within one of the exceptions, the Act states plainly and unequivocally that the employee is included." *Id.* at ——, 111 S.Ct. at 2404.

The district court erred, not only in its interpretation as to the breadth of the *Gregory* holding, but also in its applicability to the instant case. Here, there are no ambiguities in the terms or provisions of § 90F that should give us pause as to whether those affected are employees within the meaning of § 4(a). The district court determined that the effect of the 1986 congressional amendment to the ADEA on statutes such as Massachusetts's is de facto ambiguous. Such reasoning, however, begs the threshold question of preemption. In *Gregory*, the text of the ADEA itself is unclear as to its applicability to judges, giving rise to ambiguity which the Court resolved in Missouri's favor. Here, there is no textual uncertainty, and the proper method of resolving the issue is to analyze the conflict under the standards of preemption doctrine, something the district court never did.

### B.

To recapitulate, "in the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law." *Cipollone v. Liggett Group, Inc.*, — U.S. —, —, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). State law conflicts with federal law when compliance with both is a physical impossibility. *See, e.g., Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818 (1st Cir.1992); *Pedraza v. Shell Oil Co.*, 942 F.2d 48 (1st Cir.1991).[3]

Under § 90F, retirement boards are required to take specific action upon the seventieth birthday of state employees. The possible result of this action is the involuntary retirement of state employees who fail to pass the requisite tests. Such action is not reconcilable with the plain purpose of § 4(a) which prohibits employers from discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

For example, in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), the Supreme Court considered whether a Wyoming statute, which required game and fish wardens who had reached age 55 to seek the approval of their employer in order to remain employed, violated the ADEA. Much as Massachusetts does here, Wyoming argued that the statute in question did not violate the ADEA on its face because the statute served in assuring the physical preparedness of Wyoming game wardens to perform their duties. The Court rejected the argument and concluded that Wyoming could continue the statute only if it could demonstrate age was a bona fide occupational qualification for the job of game warden. *Id.* at 239, 103 S.Ct. at 1061. Significantly, the Court wrote:

> Under the ADEA, [ ] the State may still, at the very least, assess the fitness of its game wardens and dismiss those wardens whom it reasonably finds to be unfit. Put another way, the Act requires the State to achieve its goals in a more individualized and careful manner than would otherwise be the case, but it does not require the State to abandon those goals, or to abandon the public policy decisions underlying them.

*Id.*

Similarly, here Massachusetts may still assess the fitness of its employees and dismiss those employees whom it reasonably finds to be unfit. But it must do so "in a more individualized and careful manner" than the scheme envisioned by § 90F. In other words, Massachusetts is not being asked to abandon the public policy of determining the fitness of its employees, just as Wyoming was not being asked to abandon the public policy of determining the physical preparedness of its game wardens. In-

---

**3.** The district court's opinion focuses on the reasonableness of the state's method of implementing the dual goals of enabling state employees to continue working and ensuring their competency. This is not, however, an equal protection analysis in which rational and legitimate state interests are to be respected by the courts. Under preemption analysis, the focus is not on the purposes of the Commonwealth's statute, but on the interaction between the state statute and the federal statute in question. In the context of the ADEA, reasonableness only enters into judicial analysis in assessments of affirmative defenses available under § 4(f).

stead, pursuant to the ADEA, just as Wyoming could not arbitrarily pick 55 years of age as the point at which to measure the physical preparedness of its game wardens, Massachusetts may not arbitrarily set up seventy years of age as the point at which to determine the fitness of its employees.

The Supreme Court concluded in *EEOC v. Wyoming:*

> [Wyoming] remain[s] free under the ADEA to continue to do precisely what [it is] doing now, if [it] can demonstrate that age is a "bona fide occupational qualification" for the job of game warden.... [T]he state's discretion to achieve its goals in the way it thinks best is not being overridden entirely, but it is merely being tested against a reasonable federal standard.

*Id.* at 240, 103 S.Ct. at 1062. Here, Massachusetts' discretion to achieve its goals of determining the fitness of its employees is being tested against a reasonable federal standard. And, in the absence of an affirmative defense, we must conclude that compliance with both the state and federal statutes is a physical impossibility, meaning that the ADEA must preempt the Massachusetts law.

The two statutes are also in actual conflict because enforcement of the Massachusetts law creates an obstacle for the implementation of the goals of the ADEA. Congress enacted the ADEA to prevent the arbitrary and socially destructive discrimination on the basis of age. *Western Air Lines v. Criswell*, 472 U.S. 400, 409, 105 S.Ct. 2743, 2749, 86 L.Ed.2d 321 (1985); *Trans World Air Lines v. Thurston*, 469 U.S. 111, 120, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). The United States Supreme Court has explained that the ADEA is of particular force when mandatory retirement is at issue, as it is here. *Criswell*, 472 U.S. at 410, 105 S.Ct. at 2749. In the words of the Court, "[t]he legislative history of the 1978 Amendments to the ADEA makes quite clear that the policies and substantive provisions of the Act apply with especial force in the case of mandatory retirement provisions." *Id.* Moreover, "[t]hroughout the legislative history of the ADEA, one empirical fact is repeatedly emphasized: the process of psychological and physiological degeneration caused by aging varies with each individual." *Id.* at 409, 105 S.Ct. at 2749. Thus, the ADEA was enacted in large part to prevent mandatory retirement based on "innocent" misperceptions as to the abilities of older employees, as well as more insidious "business" judgments as to their cost.

Here, the Commonwealth of Massachusetts allows age to be the determinant as to when an employee's deterioration will be so significant that it requires special treatment. Such a conception of and use of age as a criteria for decline and unfitness for employment strikes at the heart of the ADEA. The entire point of the statute is to force employers to abandon previous stereotypes about the abilities and capacities of older workers. Employers may still regulate and condition employment, but they may no longer immediately turn to age as a convenient, simple criterion. They must be prepared to justify their use of age rather than individualized factors.

■ In finding that the ADEA did not preempt § 90F, the district court reasoned that § 90F is "an Act relating to the qualifications of state employees which was lawful and an eminently reasonable expression of state power when enacted." Thus, the Court concluded, to hold § 90F as preempted by the ADEA would be "to indulge in judicial legislation to override the balance of federal and state powers." No one disputes the proposition that the historic functions of regulating the relationship between the public employer and public employees have traditionally been left to the states. But it is also far too late in the day to argue that Congress does not have the power to require states to regulate the public employer/public employee relationship in a non-discriminatory fashion.[4]

---

4. Case law supports the application of other federal anti-discrimination statutes to state employment relationships. *See EEOC v. County of Allegheny*, 705 F.2d 679, 682 (3d Cir.1983); *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219, 1225 (9th Cir.1971).

Because the district court rested its grant of summary judgment for the defendants solely on its interpretation of whether the ADEA preempted facially the Massachusetts law, it did not reach the other defenses made by the Commonwealth. The appellees, however, reassert those defenses on appeal and we address them next.

## III.

Appellees argue that, even if the annual medical examination requirement is found to conflict with § 4(a) of the ADEA, § 90F is still exempt from the prohibitory provisions of the ADEA under exceptions denoted in § 4(f)(1) and § 4(f)(2) of the ADEA.

## A.

Section 4(f)(1) provides that "It shall not be unlawful for an employer, employment agency, or labor organization (1) to take any action otherwise prohibited ... where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, *or where the differentiation is based on reasonable factors other than age....*" (emphasis added).

■ According to appellees, there is a possibility that the physical examinations could be based on a reasonable factor other than age. They argue that in interpreting § 90F, our focus should be not on the age requirement which triggers the condition of continuing employment, but rather, on the examination requirement itself. Employees over seventy will not be involuntarily retired because they are over seventy, but because their mental and or physical faculties are failing.

We cannot accept this argument. In *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court confronted and rejected a similar argument. *Manhart* involved a policy of the Los Angeles Department of Water and Power requiring larger contributions from women than men to the Department's pension fund because women as a group live longer than

do men as a group. A class made up of women employed or formerly employed by the department challenged the policy as a violation of Title VII of the Civil Rights Act of 1964. Plaintiffs claimed that the contribution differential constituted discrimination on the basis of sex. The Department answered that sex was not the factor on which the distinction was being drawn; it was longevity. The Court rejected this contention, holding that but for their sex, women would not be required to pay more for their retirement benefits. The Court acknowledged that as a class women tend to live longer than men. *Manhart*, 435 U.S. at 707, 98 S.Ct. at 1374. But the Court found it to be equally true that all individuals in the respective classes do not share the characteristics that differentiate the average class representatives. *Id.* at 708, 98 S.Ct. at 1375. Thus, the Court reasoned that even where characteristics may be class-based, Title VII requires fairness to individuals rather than to classes. *Id.* In response to the Department's specific argument that the different contributions exacted from men and women were based on the factor of longevity rather than sex, the Court wrote:

It is plain [ ] that any individual's life expectancy is based on a number of factors, of which sex is only one. The record contains no evidence that any factor other than the employee's sex was taken into account in calculating the [ ] differential between the respective contributions by men and women.... [O]ne cannot say that an actuarial distinction based entirely on sex is "based on any other factor than sex. Sex is exactly what it is based on."

*Id.*

Similarly, here appellees argue that the requirement that employees aged seventy or older pass an annual medical examination is based on fitness rather than age. But, as the Supreme Court found in *Manhart*, it is clear that an individual's fitness to work is based on a number of factors, of which age is only one. And, as in *Manhart*, the record contains no evidence that any factor other than the employee's age was taken into account in requiring an an-

nual medical examination. Thus, as in *Manhart*, we are forced to conclude that age is exactly what § 90F is based on. The reasonable factor other than age defense is simply not applicable to § 90F.

Appellees argue that *Manhart* gave only cursory treatment to this issue and that because it predated *Gregory*, it has less weight. Both assertions are incorrect. As an initial matter, *Manhart* is clear in holding that the sex-based differentiation in question could not be justified. Moreover, in *Gregory* the reasonable factor defense was never raised. Finally, while *Manhart* does arise out of Title VII and not out of the ADEA, the First Circuit, like the United States Supreme Court, has made clear that the ADEA tracks the law of Title VII. *Thurston*, 469 U.S. at 121, 105 S.Ct. at 621; *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 820 n. 15 (1st Cir.1991) ("As the substantive provisions of the ADEA were derived *in haec verba* from Title VII ... we may look to constructions of the term [employer] in the Title VII ... context for guidance.") (citing *Lorillard v. Pons*, 434 U.S. 575, 584 & n. 12, 98 S.Ct. 866, 872 & n. 12, 55 L.Ed.2d 40 (1978); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234 (1989)); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014, 1015 (1st Cir.1979).

The alternative defense in § 4(f)(1)—the bona fide occupational qualifications—is an affirmative defense which the Commonwealth does not raise. In *EEOC v. East Providence*, 798 F.2d 524, 528 (1st Cir. 1986), the First Circuit adopted the two-pronged test articulated by the United States Supreme Court in *Criswell*. Under the *Criswell* test, in assessing a BFOQ defense,

> an employer must first establish that the job qualifications which the employer invokes to justify his discrimination are " '*reasonably necessary* to the essence of his business.' " If the employer succeeds in making this showing, it must then establish that it "is compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry."

*East Providence*, 798 F.2d at 528 (citing *Criswell*, 472 U.S. at 413–414, 105 S.Ct. at 2751.) (emphasis in original)). In *East Providence* the Court found that the city had successfully established reasonable necessity and its reliance on age as the ordinance related to mandatory retirement of police officers over age 60. Here, the Commonwealth has not tailored the statute to particular jobs, but rather to all. *See also Thurston*, 469 U.S. at 122, 105 S.Ct. at 622 ("In order to be permissible under § 4(f)(1), however, the age-based discrimination must relate to a 'particular business.' ").

## B.

■ We now turn to appellees' argument that § 90F fits under the § 4(f)(2) exemption of the ADEA. That section provides in relevant part:

> It shall not be unlawful for an employer, employment agency, or labor organization ... to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section—
>
> . . . .
>
> (B) to observe the terms of a bona fide employee benefit plan—
> (i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker
>
> . . .
>
> (ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter. Notwithstanding clause (i) or (ii) of subparagraph (B), *no such employee benefit plan or voluntary early retirement incentive plan shall excuse the failure to hire any individual, and no such employee benefit plan shall [ ] require or permit the involuntary retirement of any individual* specified by section 631(a) of this title, because of the age of such individual.

29 U.S.C. § 623(f)(2) (1992) (emphasis added).

In order to be exempt pursuant to § 4(f)(2), an employment plan must be a bona fide plan which is covered by § 4(f)(2), the employer's actions must be in observ-

74

ance of the plan, and the plan must not be a subterfuge to evade the purposes of the ADEA. *Public Employees Retirement System v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989); *EEOC v. Boeing Svcs. Int'l*, 968 F.2d 549 (5th Cir. 1992); *EEOC v. Orange County*, 837 F.2d 420, 421 (9th Cir.1988). The plan envisioned in § 90F facially violates the qualification that the plan may not require or permit involuntary retirement. The United States Supreme Court in *Betts* concluded that in order for a benefit plan to qualify for the § 4(f)(2) exemption, it must not be a method of discriminating in the "nonfringe" aspects of the employment relationship. *Betts*, 492 U.S. at 177, 109 S.Ct. at 2866. The Court elaborated that § 4(a)(1) and § 4(f)(2) could both be given effect only if § 4(f)(2) exempts bona fide plans that are not a method of discriminating in other nonfringe benefit areas. *Id.; see also EEOC v. Westinghouse Elec. Corp.*, 925 F.2d 619, 623 (3d Cir.1991) ("The Court did not define 'nonfringe benefit' [in *Betts*] but its use of the term makes clear that the terms 'bona fide employee benefit plan' and 'nonfringe benefit' are mutually exclusive."). Although the Court remanded the case for resolution of this issue, it held: "As a result of the 1978 amendments, § 4(f)(2) cannot be used to justify forced retirement on account of age." *Betts*, 492 U.S. at 166 n. 2, 109 S.Ct. at 2860 n. 2. Similarly, in *Thurston*, 469 U.S. at 124, 105 S.Ct. at 623, the Court stated that in the context of § 4(f)(2), "any seniority system *that includes the challenged practice is not 'bona fide' under the statute."* See also *Betts v. Hamilton County*, 897 F.2d 1380, 1381 (6th Cir.1990) (on remand from the Supreme Court, determining plan required involuntary retirement based on age when disability choices were restricted upon reaching age of sixty).

Section 90F cannot qualify for the § 4(f)(2) exemption. Section 90F acts as a conditional involuntary retirement program, which some employees may escape through satisfaction of a burden imposed on them by the statute. It regulates not "fringe benefits," but the heart of the employment relationship itself. Section 90F clearly forces retirement in precisely the manner which the Supreme Court explicitly found to be beyond the scope of the exemption.[5]

## IV.

In conclusion, we hold that § 90F is violative of, and is preempted by, the ADEA because it stands in direct conflict with § 4(a) of the ADEA. Specifically, Massachusetts cannot comply with the ADEA prohibition that no employer may discriminate against any individual because of age with respect to compensation, terms, conditions or privileges of employment, while at the same time requiring employees seventy years of age or older to pass an annual medical examination as a condition of continued employment pursuant to § 90F. We also hold that § 90F is not exempt from the requirements of the ADEA based on either of the two exemptions provided in § 4(f)(1) or § 4(f)(2) of the ADEA. Under § 4(f)(1), we cannot rationally conclude that the distinction among employees for the purpose of implementing § 90F is based on any reasonable factor other than age. Under § 4(f)(2), we cannot rationally find that § 90F satisfies the bona fide employee benefit plan exemption. In order for a plan to qualify under this exception, there may not be a provision which requires mandatory retirement. Mandatory retirement is, of course, the point of § 90F.

For the foregoing reasons, we will reverse the order of the district granting summary judgment in favor of Massachusetts and the BCRA, and we will remand to the district court for entry of summary judgment in favor of EEOC and for further proceedings consistent with this opinion.

*Reversed and Remanded.*

---

**5.** As is argued in the amicus brief, "Since § 90F *permits* ... only those employees age seventy and older who pass the annual examination to continue employment, the only conclusion to be drawn is that *those who do not pass the examination are not* permitted to continue employment."