Vernon H. MUSTAFA, Plaintiff,

v.

STATE OF NEBRASKA DEPART-
MENT OF CORRECTIONAL SER-
VICES; Harold Clarke, individually;
Theresa Predmore, individually; and
Dan Schmuecker, individually, Defen-
dants.

No. 4:99CV3280.

United States District Court,
D. Nebraska.

March 6, 2002.

Elaine A. Waggoner, Waggoner Law Firm, Lincoln, NE, for plaintiff.

Vicki L. Boone-Lawson, Attorney General's Office, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is before me on the defendants' amended motion for summary judgment. (Filing no. 66.) After careful consideration of the pleadings, evidence, and briefs submitted by the parties, I will deny the motion in part and grant it in part.

## I. BACKGROUND

In July 1997, Theresa Predmore (Predmore) was a Unit Administrator at the Nebraska State Penitentiary (NSP). (Filing no. 65, Predmore aff. ¶ 2.) To meet a need for more Case Managers under her supervision, Predmore submitted a job requisition to the Nebraska Department of Correctional Services (DCS) Personnel Department. (Filing no. 65, Predmore aff. ¶ 2.) The DCS Personnel Department approved eight new Case Manager positions for NSP. (Filing no. 65, Predmore aff. ¶ 17, Ex. D.) The positions were advertised internally,[1] and forty-four individuals applied. (Filing no. 65, Avecedo aff. ¶ 9.) Among the forty-four applicants was the plaintiff, Vernon Mustafa (Mustafa). Mustafa is an African–American male and a Muslim. (Filing no. 46, ¶ 7.) At the time he applied for the Case Manager position, Mustafa was approximately fifty years old (Filing no. 46, ¶ 7), and he had worked as a DCS Case Worker[2] since 1986 (Filing no. 46, ¶ 10).

Hope Avecedo (Avecedo), a "Personnel Officer" with the DCS, conducted an initial review of the applications to select interview candidates. (Filing no. 65, Avecedo aff. ¶ 8.) Originally, Avecedo did not select Mustafa to interview. (Filing no. 65, Avecedo aff. ¶ 10–12.) After Mustafa complained to another DCS employee, however, Mustafa was permitted to interview for the Case Manager position. (Filing no. 46, ¶ 12.)

Mustafa interviewed before a board of four DCS employees. The interview board consisted of Predmore, Dan Schmuecker (Schmuecker), Fred Britten (Britten), and Aaron Hall (Hall). (Filing no. 65, Predmore aff. ¶ 5.) Predmore, Schmuecker, and Britten are Caucasian (Filing no. 65, Mustafa dep. 27:15–25); Hall is African–American (Filing no. 67, Hall aff. ¶ 5). During each interview, the board asked a series of nine questions[3] and scored each interview-

---

1. The internal posting read as follows:

 Apply to appropriate facility as noted. If you are not contacted within six weeks about the positions for which you apply, please assume that you are not among the top candidates.
 **UNIT CASE MANAGER (6 POSITIONS) /NE STATE PENITENTIARY/ $2186 MO 313166** Manages classification process, participates in unit disciplinary hearings, assists with inmate grievance procedures, and supervises unit case-workers. Enforces rules and regulations. **REQUIREMENTS:** Bachelor's degree in Behavioral Sciences or related field plus two years correctional experience, of which one year should be in a supervisory position. Equivalent years of related experience may substitute for education. Ability to communicate effectively with inmates of diverse ethnic, racial, and educational backgrounds. Bilingual (English/Spanish) desired. Verification of credentials may be required at interview. Submit a NE State Application form to Department of Correctional Services Personnel, P.O. Box. 94661, Lincoln, NE 68509–4661. **Closes: August 1, 1997.**

 (Filing no. 65, Avecedo aff. ¶ 3, Ex. A (emphasis in original).)

2. Mustafa began employment with the DCS in 1983 and was promoted to Case Worker in 1986. (Filing no. 46, ¶ 10.)

3. The scored questions were:

 1. As part of your duties as Case Manager, you will be writing, reviewing, and evaluating individuals under your direct supervision. In what ways can an employee performance evaluation be a supervisory tool?
 2. Explain the grievance procedure time limits and purpose of the grievance procedure.
 3. As a Case Manager, you will be involved in the Unit Disciplinary Committee. Explain what due process time limitations must be met. Explain what rights are waived by the inmate whose misconduct report is heard by the UDC. Explain what sanctions can be imposed by the UDC.
 4. Relative to Custody Classification, in what cases would an inmate need a psychological evaluation?

ee's responses on a numerical scale of zero to four. (Filing no. 67, Hall aff. ¶ 15.) Mustafa received a combined score of 54, the lowest score of the four African–American candidates, and a score "substantially lower" than the scores received by the successful applicants.[4] (Filing no. 65, Avecedo aff. ¶ 17.) Ultimately, the interview board did not recommend Mustafa for a Case Manager position, noting that he "[a]nswered several questions incorrectly or incompetently." (Filing no. 65, Predmore aff. ¶ 17, Ex. D.) Instead, the board submitted eight other names for recommended hire: six men, one of whom was a racial minority,[5] and two women. (Filing no. 65, Predmore aff. ¶ 17, Ex. D.) At least some of the selected candidates were younger than Mustafa.[6] (Filing no. 46, ¶ 34.)

Ultimately, Mustafa exhausted his administrative remedies and instituted this suit, asserting a battery of claims under state and federal law. I then dismissed some of Mustafa's claims on immunity grounds. (Filing no. 59.) The defendants now seek summary judgment on all of the remaining claims. (Filing no. 66.)

## II. DISCUSSION

After reviewing the Amended Complaint (Filing no. 46) and Mustafa's brief in opposition to the amended motion for summary judgment, I conclude Mustafa asserts six remaining claims. All are related to the defendants' failure to promote Mustafa to Case Manager in 1997. Mustafa claims: (1) discrimination based on race in violation of Title VII; (2) discrimination based on race in violation of the equal protection guarantee of the Fourteenth Amendment; (3) discrimination based on age in violation of the equal protection guarantee of the Fourteenth Amendment; (4) discrimination based on religion in violation of the equal protection guarantee of the Fourteenth Amendment; (5) retaliation for exercise of speech protected by the First Amendment; and (6) deprivation of due process for damage to a liberty interest in reputation.

### A. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 612 (8th Cir.1999). "In making this determination, the function of the court is not to weigh evidence and make

---

5. One of your duties as Case Manager will be to process disciplinary appeals. How do you process and appeal and what are the time limits involved?
6. What is the purpose of Unit Management?
7. Name the 6 categories on the Re-classification Action Form.
8. If a new policy is being implemented and you disagree with the policy, what actions would you take?
9. Describe the filing scheme of the inmate file.

(Filing no. 67, Hall aff. ¶ 11, Ex. A.)

4. All of the board members indicate their scores for Mustafa were "substantially lower" than the recommended candidates. (Filing no. 67, Hall aff. ¶ 17; Filing no. 65, Predmore aff. ¶ 16; Schmuecker aff. ¶ 14; Britten aff. ¶ 15.) Mustafa received a score of 16.5 from Hall, 14 from Britten, 12 from Predmore, and 11.5 from Schmuecker. (Filing no. 67, Hall aff. ¶ 17; Filing no. 65, Predmore aff. ¶ 16; Schmuecker aff. ¶ 14; Britten aff. ¶ 15.)

5. The board recommended Calvin Haywood for employment as a Case Manager, noting that he interviewed acceptably and helped meet the interview board's affirmative action goal of hiring two females, one African–American, and one Hispanic. (Filing no. 65, Predmore aff. ¶ 17, Ex. D.)

6. Mustafa does not provide the ages or identities of the allegedly younger candidates.

credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999). I must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir.1997) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

■ I am mindful that "summary judgment should seldom be granted in discrimination cases." *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). To survive summary judgment, however, the plaintiff's evidence "must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (*citing Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir. 1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of [his] claim." *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995).

## B. TITLE VII

■ Mustafa first contends the DCS failed to promote him based on his race in violation of section 703(a)(1) of Title VII of the Civil Rights Act of 1964 (Title VII). Title VII provides in pertinent part: "It shall be an unlawful employment practice for an employer—'(1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privi-

leges of employment, because of such individual's race, color, religion, sex, or national origin....'" 42 U.S.C. § 2000e-2(a). Under Title VII, a plaintiff can establish the existence of intentional discrimination by presenting either direct or indirect evidence of employment discrimination. *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir.1997). In the present case, Mustafa relies on indirect, circumstantial evidence of discrimination.

■ In "indirect" evidence cases under Title VII, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), governs the burden of production and order of proof. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of employment discrimination. To prove a prima facie failure-to-promote claim, an employee must establish that: (1) the employee was a member of a protected group; (2) the employee was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) the employee was not promoted; and (4) similarly situated employees, not part of the protected group, were promoted instead. *Austin v. Minnesota Min. and Mfg. Co.*, 193 F.3d 992, 995 (8th Cir.1999) (*citing Lyoch v. Anheuser–Busch Cos.*, 139 F.3d 612, 614 (8th Cir.1998)).

■ Here, Mustafa is African–American and thus a member of a protected group. He applied for one of eight open positions and was ultimately permitted to interview. Mustafa was not selected as a Case Manager yet several nonprotected persons received positions. Accordingly, the prima facie case is arguably met. *See Landon,*

72 F.3d at 624 (noting that "[t]he prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue of racially-motivated action.").

■ Under *McDonnell Douglas,* "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The presumption shifts the burden of production to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Here, the DCS cites Mustafa's poor interview as the legitimate, nondiscriminatory reason for not recommending promotion.

■ The nondiscriminatory reason proffered by the DCS is sufficient to rebut the presumption raised by the prima facie case. When the employer successfully rebuts the prima facie case, the presumption of discrimination is eliminated and the court must proceed to the ultimate issue of discrimination. *St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742; *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In the summary judgment context, I must determine whether "the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision." *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1336–37 (8th Cir.1996).

■ Mustafa contends the interview scoring was subjective, thereby creating a genuine issue of fact regarding pretext. (Plf.'s Brief at 4.) In particular, Mustafa argues the interview scores given should have been round numbers between zero and four instead of the half-point scores he

received from some interviewers. (Plf.'s Brief at 4.) Mustafa also contends he was more qualified for the Case Manager position than one of the selected candidates, Charlotte Hansen (Hansen), thus suggesting possible pretext. (Plf.'s Brief at 5.) After review of the evidence, however, I conclude Mustafa has failed to advance facts demonstrating a genuine dispute regarding pretext.

■ First, I note that many of the actual interview questions were not purely "subjective" because they required knowledge of specific, objective facts.[7] Second, to the extent the scoring can be described as "subjective," such subjectivity does not automatically demonstrate pretext. *Kelley v. Goodyear Tire and Rubber Co.,* 220 F.3d 1174, 1177 (10th Cir.2000) (Magill, J., sitting by designation) (noting that plaintiff's assertion of subjectivity did not demonstrate pretext). By nature, most interviewing involves a degree of subjectivity and judgment which is important to the selection process. *Kelley,* 220 F.3d at 1178; *Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (noting that "subjective evaluations of a job candidate are often critical to the decisionmaking process...."); *Risher v. Aldridge,* 889 F.2d 592, 597 (5th Cir.1989) (noting "[s]ubjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions."). It is certainly true that purely subjective criteria warrant scrutiny, *see Bell v. Bolger,* 708 F.2d 1312, 1319–20 (8th Cir.1983), but the mere subjectivity of a nondiscriminatory reason does not disclose pretext when the defendant articulates a "clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman,* 229 F.3d at 1034; *see also Burdine,* 450 U.S. at 258, 101 S.Ct. 1089.

**7.** For the text of the questions, see note 3, *supra.*

I conclude the DCS' proffered nondiscriminatory reason is founded on clear and reasonably specific grounds. The same questions were asked of each candidate and the interview board explicitly noted that Mustafa answered several questions incorrectly or incompetently. (Filing no. 65, Predmore aff. ¶ 17, Ex. D). Furthermore, the interview board's use of half-point scoring does not support an inference of pretext. Although one DCS employee suggests that interview scoring should utilize whole numbers,[8] there is no evidence the interview board used a different scoring system for the other forty-three candidates, African–American or otherwise. *See Floyd v. State of Mo. Dept. of Soc. Serv.*, 188 F.3d 932, 937 (8th Cir. 1999) (noting that departures from policy do not generate inference of pretext when the departure affects all candidates).

██ Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). The threshold question is whether the employer's "reasons for employment actions are true, not if they are wise, fair or correct." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir.2002) (*citing Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir.1998)). Here, the subjectivity and half-point scoring, without more,[9] do not suggest the DCS' proffered nondiscriminatory reason is dishonest.

██ Third, Mustafa's contention that he was "more qualified" than Charlotte Hansen also fails to demonstrate pretext. Although an employer's selection of a substantially less qualified candidate may support a finding of pretext and intentional discrimination, *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir.1997), minor differences in qualifications do not generate suspicion. Second-guessing employers' selections between comparatively qualified candidates is inappropriate because federal courts are not super-personnel departments. *Id.; Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995). Accordingly, a comparative review of qualifications discloses possible pretext only when the disparity between qualifications is "overwhelming." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999) (citation omitted); *Sheets v. National Computer Systems, Inc.*, 2000 WL 33364120 at *9 (S.D.Iowa Dec.7, 2000); *see also Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir.2001) (requiring a "strong showing" of disparity); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 103 (2d Cir.2001) (same).

Given the posted job description for Case Manager, *supra* at note 1, the relative qualifications of Mustafa and Hansen are not overwhelmingly lopsided. *See Deines v. Texas Dept. of Protective and*

---

**8.** Personnel Officer Hope Avecedo indicates:

[A]n interviewee who had an incorrect or no response was scored with a 0; for a partial response to a question, a score of 1 was given; for a response that addressed the question but with no additional details or examples, a score of 2 was given; for a response that addressed all parts of expectations and included some details or examples, a score of 3 was given; and for a response which addressed all parts of expectations indicating complete knowledge and/or experience in relationship to the question, a score of 4 was given.

(Filing no. 65, Avecedo aff. ¶ 16.) Avecedo's contentions are actually incorrect. At least some members of the interview board used half-point scores. *See* note 4, *supra.*

**9.** For example, subjectivity combined with statistical evidence of racial underrepresentation may generate an inference of discrimination. *See Kelley*, 220 F.3d at 1178; *Bell*, 708 F.2d at 1320 (concluding "the use of such a subjective rating device, coupled with statistical evidence of a pattern of discrimination, may be probative evidence of pretext."). No statistical or pattern evidence was advanced in this case.

*Regulatory Services,* 164 F.3d 277, 280–81 (5th Cir.1999) (noting that disparity must be so obvious as "to jump off the page and slap you in the face."). Both candidates possessed multiple years of corrections experience, and for approximately two years, they held the same job. In addition to being a case worker, Hansen had experience as a corrections officer, corporal, and sergeant.[10] Although Mustafa had a college degree and Hansen did not, Hansen had more experience supervising staff. I conclude that Mustafa's qualifications, when compared to Hansen's, do not show disparity sufficient for a reasonable jury to find pretext. *See, e.g., Pierce v. Marsh,* 859 F.2d 601, 604 (8th Cir.1988) (noting that "[t]he mere existence of comparable qualifications between two applicants, one black male and one white female, alone does not raise an inference of racial discrimination.") (finding no pretext).

 Although lack of evidence demonstrating pretext disposes of Mustafa's Title VII claim, I note that summary judgment would still be appropriate even assuming the presence of pretext. The ultimate question in Title VII cases is whether the employer intentionally discriminated, and the ultimate burden of proving intentional discrimination rests with the plaintiff. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. In this case, there is simply no evidence the defendants failed to promote Mustafa because he is African–American. There is no evidence of racially inappropriate statements, jokes, or conduct by the members of the interview board or defendant Clarke, and there is no evidence of a pattern or practice of minority underrepresentation or mistreatment of African–American employees at NSP. The

interview board itself included one African–American member, and even he scored Mustafa lower than the recommended candidates. (Filing no. 67, Hall aff. ¶ 17.) Accordingly, the evidence does not reasonably support an inference of racially-motivated action.

## C. CLAIMS PURSUANT TO 42 U.S.C. § 1983

 Mustafa's remaining claims are made against the individual defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides a federal cause of action against state officials for deprivation of the "rights, privileges, or immunities secured by the Constitution and the laws" of the United States. 42 U.S.C. § 1983; *Grey v. Wilburn,* 270 F.3d 607, 611 (8th Cir.2001). To state a cognizable claim under section 1983, a plaintiff must establish: (1) that the defendant acted under color of state law, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities, *Id.; Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

### 1. RACE DISCRIMINATION

 Mustafa's first claim under section 1983 is a repeat of his race discrimination claim under Title VII. Section 1983 race discrimination claims are evaluated under the *McDonnell Douglas* framework applicable to Title VII claims. *Richmond v. Board of Regents of University of Minne-*

---

**10.** Hansen began working as an NSP correctional officer in 1987, was promoted to corporal in 1989, and she ultimately became a sergeant in 1993. As corporal and sergeant, Hansen had supervisory responsibilities over both inmates *and* staff. She left the DCS in October 1994, but ultimately returned to work in 1995 as a Case Worker, the same position held by Mustafa. (Filing no. 76, Avecedo aff. ¶ 11.)

*sota*, 957 F.2d 595, 598 (8th Cir.1992). Because Mustafa fails to advance evidence demonstrating possible pretext and racially-motivated action, summary judgment is appropriate on Mustafa's claim of race discrimination under section 1983. *Id.*

## 2. AGE DISCRIMINATION

Mustafa's second claim is for age discrimination pursuant to 42 U.S.C. § 1983. He contends the defendants violated the Equal Protection Clause of the Fourteenth Amendment by refusing to promote him because of his age. The defendants respond that Mustafa cannot assert an age discrimination claim under section 1983. They argue the Age Discrimination in Employment Act (ADEA) is the exclusive means for redressing age discrimination in employment.[11]

 Initially, I note that ADEA claims against states are barred by the Eleventh Amendment. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 82–83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). If the ADEA is the sole remedy for age discrimination in employment and the Eleventh Amendment bars ADEA claims against states, the practical effect is elimination of all age discrimination claims made against state actors in federal court. I am accordingly reluctant to find the ADEA impliedly repeals all section 1983 claims for age discrimination because implied repeal would eliminate the availability of a federal forum

11. The Fourth, Fifth, and Tenth Circuits believe the ADEA's remedial scheme is sufficiently comprehensive to preclude suits for age discrimination brought under section 1983. *See Migneault v. Peck*, 158 F.3d 1131 (10th Cir.1998), *judgment vacated, Board of Regents of University of New Mexico v. Migneault*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000), *holding reaffirmed, Migneault v. Peck*, 204 F.3d 1003, 1005 n. 1 (10th Cir.2000); *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir.1997); *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1367–72 (4th Cir.1989). The First Circuit has agreed that section 1983 claims predicated solely on ADEA provisions are precluded because "the ADEA and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under 42 U.S.C. § 1983." *Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 469 (1st Cir.1990). The First Circuit expressly declined, however, to address whether the ADEA also precludes claims predicated on the Constitution, noting "[w]e need not reach this preemption issue ... because [of] the failure of the plaintiff, as a matter of law, to establish any violation of her rights under the Constitution...." *Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 469 (1st Cir.1990).

The district courts are divided. The leading case against preemption is *Mummelthie v. City of Mason*, 873 F.Supp. 1293 (N.D.Iowa 1995). *Mummelthie* held that a plaintiff may pursue "either the ADEA or § 1983 remedy or both" when the supporting facts establish a violation of an independent Constitutional or federal statutory right. *Id.* at 1328. The United States Court of Appeals for the Eighth Circuit affirmed *Mummelthie* without reported decision on grounds unrelated to preemption. *See* 78 F.3d 589, 1996 WL 102572 (8th Cir.1996) (table). A recent trend favors *Mummelthie's* interpretation. *See, e.g., Purdy v. Town of Greenburgh*, 166 F.Supp.2d 850, 867–68 (S.D.N.Y.2001); *Bendel v. Westchester County Health Care Corp.*, 112 F.Supp.2d 324, 328 n. 3 (S.D.N.Y.2000); *Campbell v. City Univ. Constr. Fund*, No. 98 Civ. 5463, 1999 WL 435132 at *5 (S.D.N.Y. June 25, 1999); *Vicenty Martell v. Estado Libre Asociado de Puerto Rico*, 48 F.Supp.2d 81, 91 (D.P.R. 1999); *Reed v. Town of Branford*, 949 F.Supp. 87, 89–90 (D.Conn.1996); *Jungels v. State Univ. Coll. of New York*, 922 F.Supp. 779, 785 (W.D.N.Y.1996) (citing *Mummelthie*). The trend is not unanimous, however. *See, e.g., Coleman v. Prudential Relocation*, 975 F.Supp. 234, 238 n. 1 (W.D.N.Y.1997); *Gregor v. Derwinski*, 911 F.Supp. 643 (W.D.N.Y. 1996). In addition, *Mummelthie* has been criticized in a recent law review article. *See* David C. Miller, *Alone In Its Field: Judicial Trend To Hold That The ADEA Preempts § 1983 In Age Discrimination In Employment Claims*, 29 Stetson L.Rev. 573 (2000) (arguing the ADEA should be the exclusive means for redressing all claims of age discrimination in employment).

merely because the litigant is a state employee.

Although the *Kimel* Court ultimately determined the ADEA was not a valid exercise of Congress' power under section 5 of the Fourteenth Amendment, Congress certainly *intended* to provide a remedy for age discrimination against state employers when it amended the ADEA in 1974. *Kimel*, 528 U.S. at 68, 73, 120 S.Ct. 631 (recognizing Congress' attempt to abrogate immunity and extend the ADEA's substantive requirements to the states). Permitting total preemption such that no federal forum is available appears incompatible with the purpose of section 1983 and Congress' creation of a remedial scheme to address age discrimination in the ADEA.

 Furthermore, although I agree a number of inconsistencies exist between the remedial provisions of the ADEA and section 1983,[12] I do not believe the inconsistencies alone are sufficient evidence to overcome the presumption against implied repeal. *See Blessing v. Freestone*, 520 U.S. 329, 347, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (noting that "[o]nly twice have we found a remedial scheme sufficiently comprehensive to supplant § 1983."); *Livadas v. Bradshaw*, 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (noting that "apart from exceptional cases, § 1983 remains a generally and presumptively available remedy for claimed violations of federal law."). This is particularly true in the present case, where eliminating the section 1983 claim potentially creates a remedial vacuum. Accordingly, I conclude that section 1983 claims asserting an independent constitutional claim for age discrimination are not impliedly repealed by the ADEA.[13] *See Mummelthie v. City of Mason*, 873 F.Supp. 1293, 1328 (N.D.Iowa 1995) ("where the facts giving rise to the ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both.").

Having determined that Mustafa's claim for age discrimination is not precluded, I would normally address whether there are genuine issues of fact precluding summary judgment on the merits. Unfortunately, neither of the parties have briefed the merits of the age discrimination claim. Accordingly, I will deny summary judgment on the age discrimination claim without prejudice subject to reassertion. The defendants shall have until Friday, April 5, 2002, to submit a renewed motion for summary judgment and supporting brief. The plaintiff shall have rule time to submit a responsive brief if the defendants choose to file a renewed motion for summary judgment. *See* NELR 7.1(b)(1).

### 3. RELIGIOUS DISCRIMINATION

In his third claim pursuant to section 1983, Mustafa alleges the defendants failed

---

**12.** For example, unlike section 1983, monetary remedies under the ADEA are limited to back wages and liquidated damages. *C.I.R. v. Schleier*, 515 U.S. 323, 336, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982).

**13.** My holding is necessarily narrow. The claim under section 1983 must state a *constitutional* violation against *persons* acting under color of state law. I agree that section 1983 cannot be used as an alternate mechanism to assert violation of the ADEA's provisions against states, *Mummelthie*, 873 F.Supp. at 1328, as litigants should not be able to accomplish through section 1983 what they cannot constitutionally accomplish under the ADEA. *Kimel*, 528 U.S. at 82–83, 120 S.Ct. 631. Moreover, litigants cannot sue state officials in their official capacities for age discrimination under section 1983 because such a suit is really against the state, which is not a "person" within the meaning of section 1983. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir.1999).

to promote him because he is a Muslim. In particular, Mustafa contends the defendants selected only Christian candidates and improperly utilized personnel information about a 1990 disciplinary action against him.[14] The defendants argue that they did not, in fact, review anything in Mustafa's personnel file. They further argue that Nebraska's four-year statute of limitations bars any claim of religious discrimination involving the 1990 disciplinary action. *See Wilson v. Garcia*, 471 U.S. 261, 277–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (noting that section 1983 claims are governed by the personal injury statute of limitations of the state where the claim arose); *Neb.Rev.Stat.* § 25–207 (requiring that personal injury action be brought within four years).

Mustafa agrees that the "initial [disciplinary] action occurred well beyond the 4 year statute of limitation[s] period." (Plf.'s Brief at 8.) Nevertheless, Mustafa claims the interview board's failure to promote him constitutes a serial "continuing violation" because the disciplinary information remained in his file for years, and "assuming that the interview board used standard policy regarding review of personnel files of interviewees,[15] the religiously discriminatory disciplinary action information was utilized by the board in making its decision." (Plf.'s Brief at 7.)

Upon review, I agree that any claim of religious discrimination based on the propriety of the 1990 disciplinary action is barred by the statute of limitations. The 1990 disciplinary action was a "discrete, isolated instance" which occurred well outside the statute of limitations period. *See Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 761 (8th Cir.1998) (citation omitted); *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481–82 (3d Cir.1997) (reviewing factors relevant to finding of continuing violation); *cf. High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir.2000) (*per curiam*) (noting that continuing-violation doctrine has never applied to discrete acts such as failure to promote). The failure to remove information from Mustafa's personnel file does not establish a series of constitutional violations, particularly when the unconstitutionality of the underlying disciplinary action has not been established. Here, the statute of limitations

**14.** Mustafa was charged with "failure to obey orders, absence without leave, insubordinate acts and conduct inappropriate for a state employee" after he left his assigned post to pray in an NSP administrative office. (Filing no. 76, Peart aff. ¶¶ 7–8, Ex. A–B.) Mustafa disputed the charges, arguing that he prayed during a lunch break and that his superiors had approved his absence. (Filing no. 76, Peart aff. ¶¶ 7–8, Ex. A–B.) He twice appealed the disciplinary action and defendant Clarke heard Mustafa's appeal on both occasions. (Filing no. 76, Peart aff. ¶¶ 7–8, Ex. A–B.) Clarke ultimately upheld the disciplinary action, and a record of the disciplinary proceedings was placed in Mustafa's personnel file. (Filing no. 76, Peart aff. ¶¶ 7–8, Ex. A–B.) Contrary to DCS policy, the disciplinary information remained in Mustafa's personnel file for more that two years. (Filing no. 76, Steve King aff. ¶ 8, Ex. C, Regulation 112.4(IV)(B).) Nevertheless, Mustafa did not request removal of the information as the DCS regulations provide. (Filing no. 76, Steve King aff. ¶ 8, Ex. D, Regulation 112.6(7)(b).)

**15.** Mustafa provides an affidavit from another DCS employee, Ronald King, who states that during his training to sit on interview boards in 1995, he was instructed that applicants would "be screened prior to interview for negative disciplinary information…." (Filing no. 73, Ronald King aff. ¶ 5.) The administrative regulations in place during 1997, however, provide that "[a]ny disciplinary action being kept longer that two (2) years shall be retained at the Department Director's level and shall not be used for purposes of determining personnel action, but only in defense of any claim made by an employee in which such record would be relevant." (Filing no. 76, Steve King aff. ¶ 8, Ex. C, Regulation 112.4(IV)(B).)

prevents Mustafa from resurrecting his dispute over the 1990 disciplinary action.

Moreover, even ignoring the statute of limitations problem and assuming that the 1990 disciplinary action was discriminatory, Mustafa's claim still fails. The evidence of the 1997 decision not to promote Mustafa does not support a genuine dispute regarding pretext or intentional discrimination based on religion. *See Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services*, 188 F.3d 932, 936 (8th Cir.1999) (applying *McDonnell Douglas* to religious discrimination claim under section 1983); *cf. Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992, 994 (8th Cir.1999) (noting that in sexual harassment cases, at least some actionable violation must have occurred within the limitations period).

## 4. RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

Mustafa's fourth claim alleges that defendant Clarke retaliated against Mustafa for engaging in speech protected by the First Amendment. There are three primary issues in First Amendment retaliation cases: (1) whether the plaintiff's speech was "protected activity" under the First Amendment; (2) whether the plaintiff's protected activity was a motivating factor in the defendant's decision to terminate or otherwise impair the plaintiff's employment; and (3) whether the defendant would have taken the same action had the plaintiff's protected activity not taken place. *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir.2000); *Hamer v. Brown*, 831 F.2d 1398, 1401 (8th Cir.1987); *Lewis v. Harrison School Dist. No. 1*, 805

F.2d 310, 313 (8th Cir.1986); *Cox v. Dardanelle Public School Dist.*, 790 F.2d 668, 676 (8th Cir.1986).

Whether a plaintiff's speech was "protected" presents a question of law, *Bausworth v. Hazelwood School Dist.*, 986 F.2d 1197, 1198 (8th Cir.1993), and depends upon two sub-issues: (1) whether the plaintiff's speech addressed a matter of "public concern"; and (2) whether, in balancing the competing interests, the plaintiff's interest in commenting on matters of public concern outweighs the government's interest in rendering efficient services to its constituents. *Waters v. Churchill*, 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Hamer*, 831 F.2d at 1401–02; *Cox*, 790 F.2d at 672. Of course, if the speech is not about a matter of "public concern," there is no need to do a balancing of the interests.

In this case, the evidence regarding the content and context of Mustafa's statements is sparse. According to Mustafa, he made various statements during a union meeting and "to anybody that would listen." (Filling no. 65, Mustafa Dep. 45:1–5.) The statements allegedly involved an unstated DCS "policy of promoting based on favoritism," where promotions were "based on who they [candidates] know or who knows who." (Filing no. 65, Mustafa Dep. 45:10–21.) Mustafa also alleges that during a public meeting at the state capitol in 1998, he expressed "concern over those practices [of favoritism] and named specifically Howard Ferguson as being guilty of favoritism and actually running off over 74 employees from the youth facility in Omaha." (Filing no. 65, Mustafa Dep. 45:17–21.)

Although Mustafa's comments appear to be largely job-related,[16] I will sim-

---

**16.** "When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir.1999) (internal citations omitted).

ply assume that his comments of favoritism constitute protected speech. Applying that assumption, I must next determine if the evidence supports a causal link between Mustafa's protected speech and the decision not to promote. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Defendant Clarke is the focus of that inquiry because he is the only defendant named in the retaliation claim. (Filing no. 46, ¶ 44.)

In an attempt to demonstrate causation, Mustafa cites Clarke's involvement in the 1990 disciplinary action against Mustafa. (Filing no. 65, Ex. 8, interrogatory # 6.) Mustafa also asserts that Clarke asked Mustafa if he "still worked for the [DCS]" during an unspecified collective bargaining meeting. (Filing no. 65, Ex. 8, interrogatory # 6.) According to Mustafa, Clarke's "demeanor was highly suggestive of punitive intent." (Filing no. 65, Ex. 8, interrogatory # 6.) Upon consideration, I conclude that Mustafa's allegations are insufficient to preclude summary judgment.

There is simply no evidence that Mustafa's statements were a motivating factor in the decision not to promote him. *See Mount Healthy,* 429 U.S. at 287, 97 S.Ct. 568 (requiring that constitutionally protected conduct be a "substantial factor" or "motivating factor" in adverse employment decision). First, there is no evidence that Clarke altered or refused to follow the interview board's recommendations. Thus, apart from Clarke's status as "the ultimate hiring authority" (Filing no. 46, ¶ 24), it is entirely unclear how Clarke could have participated in a constitutional violation. *See Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (noting "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."). Second, there is no evidence the members of the interview board were even aware of Mustafa's protected speech. In fact, some of Mustafa's comments regarding Howard Ferguson apparently occurred in 1998, which was after the 1997 promotion decision. (Filing no. 65, Mustafa Dep. 45:17–21.) Third, even if the interview board did know of Mustafa's statements, there is no evidence those statements motivated the board's decision to promote other employees instead.

## 5. INJURY TO A LIBERTY INTEREST IN REPUTATION

Mustafa's final claim is for deprivation of due process. Mustafa contends the inclusion of the 1990 disciplinary information in his personnel file injured his reputation and thereby impaired his "freedom to take advantage of other employment opportunities." (Plf's Brief at 11) (citing *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).) The allegedly thwarted employment opportunity appears to be promotion to Case Manager.[17]

A condition precedent to any due process claim is the presence of a life, liberty, or property interest. *See Singleton v. Cecil,* 176 F.3d 419, 424 (8th Cir. 1999) (*en banc*) (citing *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995)). "[W]here no such interest exists, there can be no due process violation." *Dobrovolny v. Moore,* 126 F.3d 1111, 1113 (8th Cir.1997). Accordingly, "[a]nalysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated...." *Dover Elevator Co. v. Ar-*

---

17. Mustafa also references a job he applied for with the county, but indicates that he does not know whether his personnel file was disclosed to those responsible for hiring at the county. (Filing no. 76, Ex. 11, Mustafa Dep. 63: 1–25.)

*kansas State Univ.,* 64 F.3d 442, 445–46 (8th Cir.1995). I previously held that Mustafa demonstrated no property interest in the promotion to Case Manager (Filing no. 59 at 6), and he has not been deprived of life. Accordingly, the only available predicate interest is liberty.

 The Supreme Court has recognized a possible liberty interest where an individual's "good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). To establish a constitutional claim, a litigant must prove (1) defamation by a state official and (2) "tangible alteration" of a legal right or status, such as the loss of future federal employment. *See Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *Siegert v. Gilley,* 500 U.S. 226, 240, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (Marshall, J., dissenting); *Mascho v. Gee,* 24 F.3d 1037, 1039 (8th Cir. 1994); *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993).

Given this standard, Mustafa's due process claim fails. There is no evidence that the information in Mustafa's personnel file is so "damaging as to make it difficult or impossible to escape the stigma of those charges." *Id.* Moreover, Mustafa has not established loss of all future corrections employment or even his present employment. In *Roth,* the Supreme Court concluded that a state university's refusal to renew a teacher's contract did not present a constitutional violation. The Court noted that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. 2701 (citation omitted). Here, the failure to receive a particular promotion is not sufficient injury to implicate Mustafa's constitutional right to liberty. *See, e.g.,* *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1303 (11th Cir.2001) (refusing to recognize actionable liberty interest for nonpromotion and noting that "absent a discharge or more, injury to reputation itself is not a protected liberty interest." (citation omitted)).

THEREFORE, IT IS ORDERED:

(1) That Filing no. 66, the amended motion for summary judgment, is granted in part and denied in part as follows:

(a) summary judgment is denied without prejudice subject to reassertion on the plaintiff's claim of age discrimination pursuant to 42 U.S.C. § 1983;

(b) summary judgment is granted on all of the plaintiff's remaining claims;

(2) That the defendants shall have until Friday, April 5, 2002, to submit a renewed motion for summary judgment on the merits of the age discrimination claim.