Adela E. (Ratty) IZQUIERDO PRIETO,
Plaintiff, Appellee,

v.

Agustin MERCADO ROSA, etc., et al.,
Defendants, Appellants.

Adela E. (Ratty) IZQUIERDO PRIETO,
Plaintiff, Appellant,

v.

Agustin MERCADO ROSA, etc., et al.,
Defendants, Appellees.

Nos. 89–1164, 89–1248.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1989.
Decided Jan. 23, 1990.

**468**

Carlos Lugo Fiol, Asst. Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on briefs for Agustin Mercado Rosa, Etc., et al.

Judith Berkan, Santurce, P.R., with whom Rina Biaggi–Garcia, Roberto Roldan Burgos, Rio Piedras, P.R. and Instituto Puertorriqueno de Derechos Civiles were on briefs, for Adela E. (Ratty) Izquierdo Prieto.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This appeal was taken by the General Administrator of a Government-owned and operated radio and television station after the district court entered judgment awarding damages to an employee. Plaintiff, Adela (Ratty) Izquierdo Prieto, was 42 years old and had worked at the station for over a decade when she was suddenly removed from a public television news program on which she had been producing an "Art and Culture" section for the preceding year and one-half and returned to a position in radio. She brought this action under 42 U.S.C. § 1983[1] in the United States District Court for the District of Puerto Rico, alleging that her transfer was effectuated solely for reasons of her age and sex, in violation of her equal protection rights under the fifth and fourteenth amendments to the Constitution of the United States. The trial resulted in a jury verdict that defendants had not engaged in sex discrimination against plaintiff, but that they had engaged in age discrimination against her. The jury awarded the plaintiff $100,000 in compensatory damages and $2,000 in punitive damages, and the court entered judgment accordingly.

Defendant now appeals on four grounds: (1) that the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (1982), is the exclusive remedy for age discrimination in employment and bars suit under Section 1983, (2) that plaintiff's injury did not amount to a violation of her rights under the equal protection (and due process)[2] clause(s) of the Constitution, i.e., that she presented no cognizable claim under 42 U.S.C. § 1983, (3) that the defendant

---

1. This statute provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
   42 U.S.C. § 1983.

2. On appeal, plaintiff alleges no violation of her rights under the due process clause of the constitution but rather emphasizes that her claim was brought exclusively under the equal protection clause. She explains that she made a due process claim in the complaint for the sole rea-son that neither the First Circuit nor the Supreme Court has yet made a final determination as to the source of equal protection rights for the citizens of Puerto Rico, i.e., whether it is the fifth or the fourteenth amendment. Lack of due process was pleaded only to cover the possibility that the fifth amendment might be the source of the equal protection right. Unfortunately, large portions of defendant's brief on appeal respond not to the equal protection claim but rather to a due process claim of deprivation of liberty or property without due process of law. If such a claim was ever made, it has apparently been abandoned.

is entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and (4) that neither the award of compensatory damages nor that of punitive damages was supported by the evidence. The plaintiff cross-appeals from the dismissal by the district court of the pendent claim arising under the laws and Constitution of Puerto Rico and the court's failure to instruct the jury with regard to these claims.

Facts

The facts in this case, viewed in the light most favorable to the plaintiff, are as follows:

During the period from April 1985 through January 9, 1987, Adela E. Izquierdo Prieto, known professionally as "Ratty" Izquierdo, was working as the producer, writer and performer of the Arts and Culture segment of the nightly news program entitled "Panorama Mundial," at WIPR (Channel 6), a television and radio station owned and operated by the Commonwealth of Puerto Rico. She had worked with the station—primarily in radio—since 1972. Her work performance was rated "excellent" by her immediate supervisor, the television news director. Agustin Mercado, General Administrator of Channel 6, likewise testified at trial that her work was satisfactory, that there had been no complaints regarding her job performance, and that she was capable. In April 1985, Ms. Izquierdo had developed the Arts and Culture segment, on which she appeared thrice weekly as part of the evening news.

On January 9, 1987, without any prior notice, and with no opportunity to inform her audience, Ms. Izquierdo was removed from the program and reassigned to radio programming. The rationale given for the transfer was to strengthen the radio news. The transfer was communicated to her in the form of a memorandum from Mr. Mercado that was left in her box. The transfer was made without consulting the radio news supervisor and Ms. Izquierdo was initially given a schedule that would not allow her to participate in actual radio programs. (This was remedied eight days later by Mr. Mercado, at the intervention of her new supervisor.) Shortly after the decision, Mr. Mercado explained to a newspaper reporter that Ms. Izquierdo was removed because "we need new faces," and that her replacement, a 28–year–old woman with less experience than Ms. Izquierdo, "is young, attractive and refreshing." Mr. Mercado also made public statements to the effect that: "there is no legal force which can tell the government agencies who to appoint," and "I have the right to make changes. Ratty is an announcer and scriptwriter and that is where she belongs." With the exception of Ms. Izquierdo and a sign-language expert, all of the women on the evening news show during Mr. Mercado's administration were under 35. Mr. Mercado admitted at trial that he had referred to a woman who was in her thirties as "elderly."

Ms. Izquierdo requested Mr. Mercado to reconsider his decision, but he refused to do so. Although her salary remained the same, Ms. Izquierdo believed that the move from television to radio, in combination with the way her removal was carried out, was a demotion. Expert testimony established that a disappearance from television is a "setback" in one's career, and Ms. Izquierdo's physician provided testimony that she was suffering medically significant distress. He observed signs of a depressive anxiety, reflected in loss of sleep, weight loss, lack of enthusiasm, bodily aches, crying spells, and a generally negative outlook on life.

Analysis

■ Defendant-appellant Mercado requests that we reverse the judgment of the district court on the basis that the ADEA is the exclusive remedy for age discrimination in employment and bars suit under Section 1983. Mr. Mercado would be clearly right were the present Section 1983 action premised on a violation of plaintiff's federal statutory right under the ADEA: the ADEA and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under 42 U.S.C. § 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453

U.S. 1, 19–21, 101 S.Ct. 2615, 2625–27, 69 L.Ed.2d 435 (1981) (The existence of express remedies in the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 demonstrates that Congress intended to supplant any remedy that otherwise might be available to respondents under Section 1983.); *Day v. Wayne County Board of Auditors,* 749 F.2d 1199, 1204–05 (6th Cir. 1984) (Section 1983 cannot be used to enforce Title VII, because Title VII has its own remedial enforcement mechanism.) However, the present case is based solely on a purported violation of plaintiff's alleged constitutional right not to be discriminated against because of her age. It is not yet fully apparent whether Congress, in passing the ADEA and the amendments to it, intended the comprehensive statutory scheme to preempt Section 1983 remedies for whatever constitutional violation may be implicated by age discrimination. One circuit (and state courts in at least two states—Georgia and Maryland) have held that the ADEA preempts a constitutional claim under Section 1983 for age discrimination. *See Zombro v. Baltimore City Police Department,* 868 F.2d 1364, 1366–67 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 147, 107 L.Ed.2d 106; *Ring v. Crisp County Hospital Authority,* 652 F.Supp. 477 (M.D.Ga.1987); *McCroan v. Bailey,* 543 F.Supp. 1201, 1209 (S.D.Ga. 1982); *Frye v. Grandy,* 625 F.Supp. 1573, 1576 (D.Md.1986).

We need not reach this preemption issue, however, because the failure of the plaintiff, as a matter of law, to establish any violation of her rights under the Constitution dictates the proper outcome on this appeal. The essential prerequisites to Section 1983 relief for an alleged violation by a government official of a Constitutional right are (1) that the plaintiff has been deprived of a right, privilege, or immunity secured by the Constitution and (2) that this was done under the auspices of governmental authority. While the action to transfer Ms. Izquierdo was under governmental authority, it did not violate any of her rights under the Constitution.

In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court noted that "[t]he first inquiry in any § 1983 suit, ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Id.* at 140, 99 S.Ct. at 2692. The Supreme Court declined to determine the issue presented on the appeal in the case—whether simple negligence can give rise to Section 1983 liability—because the plaintiff had failed to satisfy this threshold requirement of Section 1983. "If there has been no such deprivation," the Court said, "the state of mind of the defendant is wholly immaterial." *Id.* We are faced with an analogous situation in the instant case.[3]

It is not easy for employees to show that job actions taken because of their age deny them the "equal protection of the laws"

---

**3.** In *Baker,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979), the Court of Appeals had analyzed plaintiff's so-called "§ 1983 false imprisonment action" exclusively in terms of traditional tort-law concepts, relying heavily on the Restatement (Second) of Torts, and had failed even to identify the constitutional right allegedly infringed in the case. It merely *assumed* that a constitutional right had been infringed.

The exact same situation characterizes the instant case. Both the parties to the trial and the trial court judge proceeded on the erroneous assumption that the *Mt. Healthy/McDonnell Douglas* approach to allocating the burden of proof in employment discrimination, *see Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973), was the applicable approach, while omitting any attempt to demonstrate what case law has established to be the sine qua non of a violation of Ms. Izquierdo's constitutional right—the lack of a rational basis for discriminating against her because of her age. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). The *McDonnell Douglas* test applies to racial and sex discrimination claims under Title VII, and has been applied as well to age discrimination claims when brought under the ADEA, *see Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979). The approach is irrelevant to a claim of age discrimination under the Constitution, however, at least unless it is first established that there was no rational basis for the defendant's act of discriminating because of age.

guaranteed by the fourteenth amendment. The Supreme Court has held that constitutional age discrimination claims are subject to the rational basis test, rather than strict or even intermediate-level scrutiny. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Under this standard, the question is not simply whether age discrimination has occurred but whether there could be *no* rational basis for applying the age-related criteria. Whether it was rational here for Mr. Mercado to transfer Ms. Izquierdo from television to radio because of her age was, moreover, a question of law for the judge—not the jury—to determine. And rationality is freely reviewable on appeal, the question being not whether a transfer because of age was right or wrong but whether some rational basis for it can be discerned. *See Bradley*, 440 U.S. at 110–11, 99 S.Ct. at 949–50. Since, as we shall explain, any age discrimination here can be rationally justified, it was error for the district court to have submitted to the jury the questions of whether Ms. Izquierdo suffered age discrimination and, if so, what compensation she should receive for any resultant injuries. We, therefore, reverse the judgment of the district court.[4]

The two cases in which the Supreme Court has addressed the issue of age discrimination both involved challenges to the constitutionality of mandatory retirement schemes. *See Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (mandatory retirement at age 50 for state police officers); *Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (mandatory retirement at age 60 for Foreign Service officers). In both cases, the Court rejected the equal protection challenges to the schemes.

The Court in *Murgia* noted that "equal protection analysis requires strict scrutiny only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class" *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566 (citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1963)). Because the right to government employment *per se* is not fundamental and because the aged do not constitute a suspect class, *id.* 427 U.S. at 313, 96 S.Ct. at 2566, the court found in both *Murgia* and *Bradley*—both of which involved government employment and charges of age discrimination in violation of the right to equal protection—that the applicable test is whether the age-related classification is rationally related to furthering a legitimate state interest. If so, it

---

**4.** The plaintiff-appellant has stated at oral argument her belief that any issue as to the lack of a constitutional right under the equal protection clause on the part of Ms. Izquierdo has been waived due to the failure of defendant-appellant to raise it at any time, either below or on appeal.

Ordinarily, we would decline to raise a defense *sua sponte* that a party had failed to raise on his own behalf. A court may, however, when good reason to do so exists, raise non-jurisdictional issues not raised by the parties either below or on appeal. *See, e.g., Schlesinger v. Councilman*, 420 U.S. 738, 743, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1985) ("although normally we do not consider questions raised neither below nor in the petition, [citations omitted] the jurisdictional and equity issues necessarily implicit in this case seemed sufficiently important to raise them *sua sponte*"); *Wood v. Georgia*, 450 U.S. 261, 265 n. 5, 101 S.Ct. 1097, 1100 n. 5, 67 L.Ed.2d 220 (1981) (conflict-of-interest issue was not raised on appeal below or included as a question in the petition for certiorari, but because it was the lawyer who argued the appeal

and prepared the petition for certiorari who was charged with a conflict of interest, he could not realistically have been expected to make that argument; thus, it is appropriate for the court to consider the issue); *Brown v. Fauver*, 819 F.2d 395, 398 (3rd Cir.1987) (although appellees did not raise the issue of exhaustion of state remedies before the district court or before the appeals court, it is nonetheless proper for the court to raise the issue *sua sponte* because of the interest of the court in minimizing conflict with its state counterparts and in maintaining the constitutional balance between the states and the federal government).

In the instant case, we address the issue of whether *any* constitutional right of the plaintiff has been violated because of its central and essential character in this Section 1983 action. The plaintiff must demonstrate that the defendant had no rational basis for his action in order to establish a violation of her constitutional right. Her failure to do this is so serious an omission that we cannot allow the district court's judgment to stand.

does not violate the equal protection clause.

Rational basis analysis is accordingly required here. Ms. Izquierdo, as an employee of the Commonwealth of Puerto Rico, was for present purposes a state employee; she charges age discrimination in violation of her right to equal protection of the laws. Under the rational basis test, the district court must ask whether the state's objective in effectuating an age-related transfer of Ms. Izquierdo was a valid one and whether the transfer rationally furthered this objective. *See Bradley*, 440 U.S. at 97–98, 99 S.Ct. 942–43. If the answer to both questions is yes, no constitutional right of Ms. Izquierdo to equal protection was violated, even though the jury supportably found that defendant Mercado had transferred Ms. Izquierdo because of her age.

### 1. *Validity of the State's Objective*

An ostensible objective of Mr. Mercado's decision to transfer Ms. Izquierdo to radio was to replace her with someone with greater audience drawing power and appeal. Mr. Mercado could have rationally believed that having "new [and young] faces" would maximize audience drawing power, even though his belief might not be accurate. Plaintiff argues that, while the maximization of viewership may be a valid goal in the context of commercial television, it is not an appropriate goal for public television because such considerations as ratings, audience appeal, ability to sell advertising spots, and profit maximization do not apply to government-owned television stations. The purpose of a state in owning and operating a television station, however, includes serving the public by providing increased access to information and enhanced opportunities for education.[5] Benefit to the public as a whole is maximized the more people take advantage of the services provided. Thus, to maximize viewership by making programs as appealing as possible is a legitimate objective in the operation of government-owned television stations. We think, therefore, that Mr. Mercado's objectives, even those that were age-related, can be reasonably said to promote a legitimate governmental ·purpose.

### 2. *Whether the State's Action in Transferring Ms. Izquierdo Rationally Furthered This Objective*

In determining whether there was a rational basis for the transfer, we accept the jury's finding that it was made because of Ms. Izquierdo's age. To be sure, Mr. Mercado at trial articulated several reasons for transferring Ms. Izquierdo that have nothing to do with her age. He mentioned the need to strengthen WIPR radio news programming, noting that Ms. Izquierdo's career had been principally in radio, that this was her area of greatest competence and experience, and that he wished to use her

5. The purpose of the Commonwealth of Puerto Rico in owning and operating its public television and radio stations has been stated in a document entitled: "Regulation for the Operation, Functioning and Administration of Public Radio and Television Stations of the Public Education Department" issued by the Public Education Department of the Commonwealth of Puerto Rico. The 'Statement of Motives' explains:

The Constitution of the Commonwealth of Puerto Rico provides that, "Everyone has the right to an education leading to the complete development of his/her personality and to the strengthening of the respect of the rights of man and of the fundamental liberties ..."
The Public Education Department, as a creation of the Constitution of Puerto Rico itself, has the basic responsibility of education in Puerto Rico.
To give faithful compliance to the preceding constitutional mandate and understanding that the cultural extension of a people is effectively propagated, among other means, through radio and television stations, the Public Education Department operates, uses and manages public radio and television stations in order to offer public service, informative, educational, recreational and general interest programming.
'Article III—Of the Objectives and Duties of the Station,' continues:
The main and fundamental objectives of the station shall be to offer public service, informative, educational, recreational and general interest programming. To these purposes it shall be understood that the station is an extension of the school in the everyday life of the people.
The preceding is from a certified translation from the Spanish provided to the trial court by the defendant.

expertise as a part of a plan to improve the radio news. He also referred to financial considerations, stating that Ms. Izquierdo's replacement took over for both Ms. Izquierdo and one other contract employee at some cost savings to the station, and to his judgment that Ms. Izquierdo's replacement was better qualified than Ms. Izquierdo for the job. The jury did not accept these explanations, finding instead that Mr. Mercado had discriminated against Ms. Izquierdo on the basis of age in making the transfers.

Even if Mr. Mercado based his decision to transfer Ms. Izquierdo on her age, however, we cannot say it would be irrational for Mr. Mercado to have believed that viewers and potential viewers of the Art and Culture section of the evening news on WIPR would prefer a younger announcer and to act on that belief by placing a younger person in Ms. Izquierdo's post with the purpose of increasing viewership. As already noted, this latter action could plausibly be thought to further the valid state objective of maximizing viewership of the public television news program.

Although Mr. Mercado's treatment of Ms. Izquierdo in effecting the transfer (not allowing her to say goodbye to her viewers, the suddenness of the transfer and the way in which it was communicated to her, and the failure to make provisions afterwards for her smooth transition to her new position with the radio) may have been reprehensible, the Constitution grants Ms. Izquierdo no more than a right against any age discrimination that is not rationally related to a valid state purpose.

■ In conclusion, we would note that Congress has acted to make discrimination on the basis of age unlawful—to the extent that the employer cannot demonstrate that youth is a bona fide occupational qualification—by passing the ADEA, 29 U.S.C. § 621, *et seq.; see, e.g., Equal Employment Opportunity Commission v. City of Janesville*, 480 F.Supp. 1375 (D.C.Wis. 1979), *rev'd on other grounds*, 630 F.2d 1254 (7th Cir.1980). Ms. Izquierdo, however, has brought her claim not under the ADEA, but under the Constitution and 42 U.S.C. § 1983. There is no right under the equal protection clause for a state employee to be free from age discrimination by her state employer so long as such discrimination is rationally related to furthering a legitimate state interest.

In light of our holding, we need not address defendant's assertions that he is entitled to qualified immunity with respect to plaintiff's claim under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), and that the awards of both compensatory and punitive damages are excessive.

In regard to the question of whether the district court erred in dismissing the pendent claims arising under the laws and Constitution of Puerto Rico and in its failure to instruct the jury with regard to these claims, even if Ms. Izquierdo had presented a valid constitutional claim under Section 1983, the dismissal of the pendent claims would not have constituted an abuse of discretion on the part of the district court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." "[T]here may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial. If so, jurisdiction should ordinarily be refused."); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), overruled on other grounds, *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Even assuming arguendo that the District Court had judicial power to exercise pendent jurisdiction over petitioners' state law claims ... the court did not abuse its discretion in not exercising that power in view of unsettled questions of state law that it would have been called upon to resolve and the likelihood of jury confusion resulting from the special defenses to a county available under the state tort claims law.). Given especially our present ruling that plaintiff lacked any via-

**474**

ble federal claim, the district judge was clearly within the bounds of his discretion in refusing to hear the state law claims.

The judgment of the district court awarding compensatory and punitive damages to the plaintiff is *reversed*, and the dismissal of plaintiff's pendent claims under the laws and Constitution of Puerto Rico is *affirmed*.