Oscar **CAMACHO**, Plaintiff,

v.

**PUERTO RICO PORTS AUTHORITY,**
**Defendant.**

**CIVIL 01–1681(JAG)(JA).**

United States District Court,
D. Puerto Rico.

March 25, 2003.

Harry A. Ezratty, San Juan, PR, for plaintiff.

Jorge A. Fernandez Reboredo, San Juan, PR, for defendant.

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

Plaintiff Oscar Camacho filed the instant action against the Puerto Rico Ports Authority ("PRPA") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution. (*See* Amended Complaint, Docket No. 5.) Plaintiff also pleads supplemental jurisdiction under the Puerto Rico Labor Discrimination Statute, 29 P.R. Laws Ann. § 146 *et seq.* *See* 28 U.S.C. § 1367. The main argument advanced by plaintiff is that the PRPA, in direct contravention of his constitutional and statutory rights, terminated his harbor pilot license on account of his age. PRPA now moves for summary judgment claiming *inter alia*

that: (1) plaintiff is not an employee as defined by the ADEA; (2) plaintiff failed to establish a *prima facie* case of age discrimination; (3) the license termination was made in accordance with Puerto Rico law; (4) the mandatory retirement at age 70 is a Bonafide Occupational Qualification; and (5) the license cancellation was not a discriminatory act under the Fourteenth Amendment. (*See* PRPA's Motion for Summary Judgment, Docket No. 30.) Plaintiff subsequently filed his opposition to PRPA's motion. (Docket No. 31.) Having considered the submissions of the parties, and for the reasons explained below, I find that PRPA's motion for summary judgment must be GRANTED in part and DENIED in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed in a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000).

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See Patterson v. Patterson,* 306 F.3d 1156, 1157 (1st Cir.2002).

" '[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir. 2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996)). A fact is considered material if it has the potential to affect the outcome of the case under the applicable law. *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993).

## THE FACTS

The facts of this case are largely undisputed. The Puerto Rico Ports Authority is a quasi-governmental agency created by and organized under the Commonwealth of Puerto Rico to, among other things, control, license, and nominate harbor pilots for the various ports in the island of Puerto Rico. (Docket No. 5, at 2.) It can sue and be sued. (*Id.*) On October 1, 1981, the PRPA issued a harbor pilot license to plaintiff Oscar Camacho. (*Id.*) Since that date, and up to June 15, 2000, Mr. Camacho worked as a duly licensed and authorized harbor pilot for the port of San Juan. (*See* Defendant's Statement of Undisputed Facts, Docket No. 30, at 1–2.) Plaintiff asserts, and defendant does not dispute, that during all the time Mr. Camacho worked as a harbor pilot, there were no complaints or reprimands with respect to his general performance or his physical abilities to perform his duties. (Docket No. 31, at 1.) On June 14, 2000, Mr. Camacho testified as a witness against PRPA in a court proceeding in which the plaintiff in that case, Daniel Murphy, claimed that PRPA had discriminated against him due to his natural origin. (*Id.*) The following day, PRPA gave plaintiff written notice that it was revoking plaintiff's license since

he had attained the age of 70. (Defendant's Statement of Undisputed Facts, Docket No. 30, at 2.) Said action is allegedly mandated by Puerto Rico law pursuant to Act 226 of August 12, 1999 (hereinafter Act 226).[1] However, plaintiff's claim of discrimination is substantially grounded on the fact that, notwithstanding its own regulations, the PRPA has allowed other pilots to continue working over the mandatory retirement age. (Amended Complaint, Docket No. 5, at 3.)

## THE ADEA CLAIM

The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, was enacted: (1) "to promote employment of older persons based on their ability rather than their age; [ (2) ]to prohibit arbitrary age discrimination in employment; [and (3) ] to help employers and workers to find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b)(2000); *Johnson v. Mayor and City Council of Baltimore*, 472 U.S. 353, 355, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985). Indeed, "Congress enacted the ADEA to prevent the arbitrary and socially destructive discrimination on the basis of age." *E.E.O.C. v. Commonwealth of Massachusetts*, 987 F.2d 64, 71 (1st Cir.1993). To advance this purpose the Act makes it unlawful for an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's age. *Id.* § 623(a)(1); *Kimel v. Board of Regents*, 528 U.S. 62, 66, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Thus, an employer will be liable if age was the motivating factor for the employer's decision. *Reeves v. Sand-*

---

**1.** Act 226 is known as the Enabling Act of the Puerto Rico Harbor Pilotage Commission. 23 P.R. Laws Ann. § 316 *et seq.* Section 22 states that: "[t]he licenses of all pilots shall

expire when the pilot attains seventy (70) years of age." 23 P.R. Laws Ann. § 361s (2000).

*erson Plumbing Prods. Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In other words, plaintiff's age must actually play a role in the employer's decision making process and have a determinative influence in the outcome. *Id.*

Additionally, it is well settled that an ADEA plaintiff at all times bears the burden of proving age discrimination. *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998). However, hardly ever will a plaintiff be able to proffer direct evidence of a discriminatory animus. *See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. at 141, 120 S.Ct. 2097 (recognizing that there will seldom be eyewitness testimony of the employer's mental process). In that case, a plaintiff may prove his or her case through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995). Under said framework, in order to establish his or her *prima facie* case of age discrimination, the plaintiff will have to prove that (1) he or she is over the age of forty; (2) his or her job performance was sufficient to meet the employer's legitimate expectation; (3) he or she suffered an adverse employment action; and (4) the employer had a continuing need for the services provided by the position from which the plaintiff was discharged. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68 (1st Cir.2002). A rebuttable presumption of age discrimination is created if the plaintiff is successful in establishing this *prima facie* case. *Id.* at 68–69. Then, the burden of production—as distinguished from the burden of proof—shifts to the employer to articulate a legitimate, non-discriminatory basis for the adverse employment action. *Id.* at 69. Once the employer satisfies this limited burden, the presumption is eliminated and the burden shifts back to the plaintiff to show that the alleged legitimate, non-discriminatory rea-

son is pretextual. *Id.* With this standard in mind, I analyze the arguments of the parties in the order they are presented.

### 1. Employee Status Under the ADEA

 PRPA denies being plaintiff's employer under the ADEA. Its contention is that it was merely the licensing organism that issued and revoked plaintiff's harbor pilot license and that plaintiff does not qualify as a covered employee under the Act. In addition, PRPA argues that case law is clear that a state agency is not an employer when it is sued in its licensing or regulatory capacity. Mr. Camacho on the other hand argues that, even though he was not an employee in the typical sense, his relation with PRPA was one of employer-employee by virtue of the statutes and regulations governing harbor pilots. According to plaintiff, an examination of both the level of control exercised over him, as well as the economic realities of the work relation with PRPA, reveals the type of employer-employee relation that the ADEA intends to cover.

The definitions of employer and employee provided by the ADEA have proven unhelpful. *See Schmidt v. Ottawa Med. Ctr. P.C.,* 155 F.Supp.2d 919, 921 (N.D.Ill. 2001), *aff'd,* 322 F.3d 461 (7th Cir.2003). The Act defines employer as "a person engaged in an industry affecting commerce who has twenty or more employees." 29 U.S.C. § 630(b). The term also includes an agent of such person and a state or political subdivision of a state. *Id.* The term employee, on the other hand, is defined as an individual who, with certain exceptions not relevant here, is employed by an employer. *Id.* § 630(f). These definitions are at best circular.

In view of these vague definitions, courts among the circuits have struggled in the determination of an employer-employee relationship under the ADEA, Title VII and

other anti-discrimination statutes.[2] To deal with the problem, some courts have adopted the so called "hybrid test" that combines the traditional test of common law agency with the modern economic realities test as set forth in cases like *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979) and *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 38 (3rd Cir.1983). While under the common law agency principles the right of the employer to control the employee is determinative, the economic realities test looks at the degree of economic dependence between the employee and the business. *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d at 37. The courts applying the hybrid test combined the two approaches reasoning that it is the economic realities of the relation, viewed in light of common law agency principles and the right of the employer to control the employee, which determines whether there is an employer-employee relation. *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir.1982). Other factors that must be considered are the following:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the

work is an integral part of the business of the 'employer;' (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d at 37.

The First Circuit has, however, refused to apply this hybrid test. In *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 631 (1st Cir.1996), the court held that, not having previously decided which test to apply, it would adopt the traditional common law agency test in light of recent Supreme Court precedent. It was held by the Supreme Court that the common law agency test set forth in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), must be applied whenever a federal statute provides an unhelpful and vague definition of what an employer is. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Thus, the court in *Speen* stated that, in the context of the ADEA, it would follow *Darden* and apply the common law agency test to determine who qualifies as an employee. *Speen v. Crown Clothing Corp.,* 102 F.3d at 631.

■ Furthermore, the Court in *Darden* stated that in determining who is an employee the court must consider the hiring parties' right to control the manner and means by which the product is accomplished. *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. at 323, 112 S.Ct. 1344. The following factors must also be considered:

---

**2.** *See, e.g., Hathcock v. Acme Truck Lines,* 262 F.3d 522, 526–27 (5th Cir.2001); *Heinemeier v. Chemetco, Inc.,* 246 F.3d 1078, 1082–83 (7th Cir.2001); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s., P.A.,* 104 F.3d 1256, 1266 (11th Cir.1997); *Daughtrey v. Honeywell, Inc.,*

3 F.3d 1488, 1495–96 (11th Cir.1993); *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir.1983); *Hickey v. Arkla Indus., Inc.,* 699 F.2d 748, 751 (5th Cir.1983); *E.E.O.C. v. Puerto Rico Job Corps,* 729 F.Supp. 208, 218 (D.P.R.1990).

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24, 112 S.Ct. 1344 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. at 751–52, 109 S.Ct. 2166). "[N]o one factor being decisive." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. at 324, 112 S.Ct. 1344 (quoting *NLRB v. United Ins. Co. of Am.,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)).

In the application of these principles, I first note that the First Circuit has already passed upon the relationship between PRPA and harbor pilots. In *Puerto Rico Ports Auth. v. M/V Manhattan Prince,* 897 F.2d 1, 12 (1st Cir.1990), the court of appeals agreed with the district court that, for purposes of *respondeat superior,* there can be no liability imposed on PRPA for the negligence of a pilot taking a ship into harbor. The court further observed that "PRPA's control is aimed at ensuring safe passage through the harbor. Its functions are related to licensing and the competency of pilots. PRPA acts like a public service commission, setting and enforcing standards within the industry (harbor services in general and pilotage in particular)." *Id.* (quoting *Puerto Rico Ports Auth. v. M/V Manhattan Prince,* 669 F.Supp. 34, 37 (D.P.R.1987)). The court of appeals, however, dedicated most of its discussion to the issue of sovereign immunity and to determine whether PRPA is an arm of the government of Puerto Rico. Also noteworthy is the fact that the court's conclusion is based on the Dock and Harbor Act, 23 P.R. Laws Ann. § 2201 *et seq.*[3] Said Act was repealed by the Enabling Act of the Puerto Rico Harbor Pilotage Commission, 23 P.R. Laws. Ann. § 361 *et seq.*[4] ("Act 226"). (*See* Statement of Purpose Act 226 of August 12, 1999.)

I do not read the decision in *M/V Manhattan Prince* as precluding a finding that PRPA is Mr. Camacho's employer for purposes of the ADEA. First, that case dealt with the doctrine of *respondeat superior.* Second, subsequent cases dealing specifically with the ADEA, Title VII, and other discrimination statutes provide the test for determining an employer-employee relation. *See Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. at 324, 112 S.Ct. 1344; *Community for Creative Non–Violence v. Reid,* 490 U.S. at 751–52, 109 S.Ct. 2166; *Speen v. Crown Clothing Corp.,* 102 F.3d at 631. Finally, the goals of the ADEA must be kept in mind in making said determination. Thus, I examine Act 226 to determine if under traditional common law agency principles PRPA is plaintiff's employer.

A review of this statute indicates that, even though it is true that PRPA is the licensing organism, and that harbor pilots are not employees in the typical sense, the statute gives PRPA wide latitude to control the daily activities of harbor pilots. Harbor pilots do not enjoy absolute independence in the performance of their duties. They are subject to a number of restrictions and to the supervision of PRPA. The following are examples of the

---

**3.** Act 151 of June 28, 1986 and its regulation number 4286 promulgated by the Ports Authority Administrator.

**4.** Act 226 of August 12, 1999.

degree of control exercised by PRPA over harbor pilots by virtue of the statute.

PRPA has the exclusive authority to issue and revoke the licenses of harbor pilots. 23 P.R. Laws Ann. § 361b. That includes, of course, the power to establish the qualifications that a person has to meet in order to be issued the license. *Id.* § 361h, 361i. In fact, no one can render harbor pilot services unless licensed by PRPA. *Id.* § 361a. The PRPA has a mandatory training program for persons applying for a pilot license. *Id.* at 361 *l.* It decides in its sole discretion the port in which the license is to be effective. *Id.* § 361g. In addition, pilots are subject to annual physical examinations as a condition for keeping their licenses in effect. *Id.* § 361i. PRPA establishes the rules and regulations concerning the conduct of pilots in the performance of their duties and it has the power to initiate disciplinary proceedings against pilots for the failure to comply with the same. *Id.* §§ 361b, 361m. Among other things, PRPA controls the way pilots give advice and service to vessels entering the ports, and the manner in which the pilot has to board a ship. *Id.* at § 361a, 361b. Also, its regulations dictates the duration of pilotage services. *Id.* at § 361a. Under this Act, pilots are required to keep logs and file written notice of incidents or collisions. *Id.* at § 361n. They can be fined or even get their licenses revoked if PRPA determines that they refused to render services or rendered them in a negligent manner. *Id.* at § 361m. The Dock and Harbor Act provided a pension plans for the benefit of pilots. The same was kept in effect with the enactment of Act 226. *Id.* at § 361v. The amounts paid are determined solely by PRPA, and the plan has to meet the requirements of the Employment Retire-

ment Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.[5] *Id.* Finally, the PRPA now determines the fees harbor pilots may charge. *Id.* at § 361a, 361b, 361t.

The degree of control exercised over harbor pilots is great. The only conclusion that can be reached is that the relation between Mr. Camacho and PRPA was one of master servant under traditional common law agency principles. I am unpersuaded by PRPA's contention that its role in this case was limited to that of a licensing board and that it did not direct the method of performance of pilot services.

PRPA cites several cases and my research has revealed others standing for the proposition that a licensing agency is not an ADEA employer. *See Ass'n. of Mexican–American Educators v. California,* 231 F.3d 572, 583 (9th Cir.2000); *Fields v. Hallsville Indep. School Dist.,* 906 F.2d 1017, 1020 (5th Cir.1990); *George v. New Jersey Bd. of Veterinary Med. Exam'r,* 794 F.2d 113, 114 (3d Cir.1986); *Haddock v. Bd. of Dental Exam'r of California,* 777 F.2d 462, 463–64 (9th Cir.1985); *Ehret v. Louisiana,* 862 F.Supp. 1546, 1551 (E.D.La.1992); *E.E.O.C. v. Waterfront Comm'n of New York Harbor,* 665 F.Supp. 197, 199–200 (S.D.N.Y.1987); *Nat'l Or. for Women v. Waterfront Comm'n of New York Harbor,* 468 F.Supp. 317, 320 (S.D.N.Y.1979). However, a close reading of these cases indicates that the only role played by the defendants was that of a licensing or regulatory agency. PRPA, by virtue of Act 226, is much more than merely a licensing board.

In sum, I find that the degree of control exercised by PRPA over the daily activities of harbor pilots by virtue of the relevant Act herein discussed is one of employ-

---

**5.** ERISA governs benefit plans particularly between employers and employees. 29 U.S.C. § 1003.

er-employee for purposes of the ADEA. Such a finding is mandated in view of traditional common law agency principles. Accordingly, I find that for the purposes of the ADEA, PRPA was Mr. Camacho's employer.

### 2. Plaintiff's Prima Facie Case

■ PRPA contends that Mr. Camacho has the burden of proving that age was the determinative factor in the discharge. It is further claimed by PRPA that Mr. Camacho has failed to establish a prima facie case of age discrimination under the four-step analysis set forth in *McDonnell Douglas*. Plaintiff argues to the contrary that a prima facie case has been established by the evidence of record. However both Mr. Camacho and PRPA incorrectly assume that the *McDonnell Douglas* burden-shifting inquiry is the appropriate test to be applied in this case.

■ Normally, in the absence of direct evidence of age discrimination, Mr. Camacho would have to establish his prima facie case under the above-described burden sharing framework. *Alvarez–Fonseca v. Pepsi Cola Bottling Co.*, 152 F.3d 17, 24 (1st Cir.1998). However, this case presents the peculiar situation wherein it is undisputed that plaintiff's adverse employment action was age-motivated. In other words, the defendant admits that the revocation of Mr. Camacho's license was due to the fact that he had attained the age of 70 and argues that under Puerto Rico law, said revocation was mandated. (*See* Defendant's Statement of Uncontested Facts, Docket 30, at 2.) Indeed, there is no factual dispute in this case as to whether age was the motivating factor in the revocation of plaintiff's harbor pilot license. As such, the issue then becomes whether the harbor pilots' mandatory license expiration at age 70 violates the ADEA.

Some background is in order. When the ADEA was enacted in 1967, it covered only private employers with more than twenty employees and protected individuals between the ages of forty and sixty-five. 29 U.S.C § 621–634 (1967); *Kimel v. Bd. of Regents*, 528 U.S. at 68, 120 S.Ct. 631. The Act was amended in 1974 to include public employees within its ambit. *E.E.O.C. v. Massachusetts*, 680 F.Supp. 455, 463 (D.Mass.1988). In 1978 Congress extended the upper limit of the protected group to the age of seventy. *Johnson v. Baltimore*, 472 U.S. at 356, 105 S.Ct. 2717. The ADEA was last amended in 1986 to, *inter alia*, eliminate the seventy-year ceiling to the end that there is no longer an upper limit. *See* 29 U.S.C. § 631(a); *Kimel v. Bd. of Regents*, 528 U.S. at 67, 120 S.Ct. 631 (noting that Congress eliminated the upper age limit and the ADEA now covers all employees that are forty and over).

In *EEOC v. Massachusetts*, 987 F.2d at 66, the court held that Massachusetts Regulation 90f's requirement that state and local employees over the age of seventy, take and pass a medical examination as a condition for employment, violated the ADEA. In that case, the enforcement of the state requirement was in direct conflict with the goals of the ADEA to the point that compliance with both was impossible. The court held that the state law was preempted under the Supremacy Clause of the United States Constitution. U.S. Const. Art. VI, cl. 2. The court further observed that the provisions of the ADEA apply with special force when mandatory retirement is at issue. *Id.* at 71(citing *Western Air Lines v. Criswell*, 472 U.S. 400, 410, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985)). The rationale is that the ADEA was enacted to prevent mandatory retirement based on misperceptions as to the abilities of older employees and to force employers to abandon previous stereotypes as to the capacity of older workers. *Id.* Employers may not turn to age as the

determinative criterion when regulating employment condition. *Id.* That is exactly what the Massachusetts regulation did in *E.E.O.C. v. Massachusetts.*, and that is exactly what 23 P.R. Laws Ann. § 316s does in the instant case.

There can be no doubt that § 316s is the equivalent of a mandatory retirement plan. Even though the actual language is that a harbor pilot's license expires when the pilot attains the age of 70, the practical effect of the statute is forced retirement. This conclusion is further supported by my previous finding that the PRPA is Mr. Camacho's employer and in view of the fact that pilotage services may be rendered only by licensed pilots. When Mr. Camacho's license was revoked, he was in essence forced to abandon his employment as a harbor pilot, an adverse employment action that was admittedly based solely on Mr. Camacho's age. Therefore, to the extent that 23 P.R. Laws Ann. § 361et seq. provides for the automatic expiration of a harbor pilot's license on account of the pilot's age, said statute is preempted by and violates the ADEA. *E.E.O.C. v. Massachusetts,* 987 F.2d at 66; *see also E.E.O.C. v. Massachusetts.,* 858 F.2d 52, 53 n. 1 (1st Cir.1988).

### 3. PRPA's Bona Fide Occupational Qualification Defense

 Next I turn to PRPA's contention that the mandatory license expiration at age 70 is permissible as a Bona Fide Occupational Qualification ("BFOQ"). The argument advanced by PRPA is that Act 226's mandatory license expiration responds to important public policy, health, and safety reasons. Further, PRPA claims that the mandatory cancellation is reasonably necessary to the essence of the harbor pilot business inasmuch as it promotes the objective of preserving security in maritime traffic. Plaintiff disagrees with this position arguing that defendant fails to show any basis for its conclusion that age has anything to do with the abilities of a pilot. It is further claimed by Mr. Camacho that defendant misplaces its reliance on the statement of motives of Act 226 regarding the protection of natural resources, the environment, and the life and property of Puerto Rican citizens. Plaintiff also contends that there is no reference whatsoever in the Act with respect to age and its relation to the safety and security concerns allegedly advanced by the statute.

29 U.S.C. § 623(f)(1) provides that:
[i]t shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age.

Similarly, section 623(f)(3) states that "[i]t shall not be unlawful for an employer, employment agency, or labor organization ... (3) to discharge or otherwise discipline an individual for good cause." 29 U.S.C § 623(f)(3). Thus, an employer may rely on age if age is a BFOQ reasonably necessary to the normal operation or the particular business. *Kimel v. Bd. of Regents,* 528 U.S. at 67, 120 S.Ct. 631. However, even with its BFOQ defense, the State's use of age has been deemed prima facie unlawful. *See id.* at 88. A BFOQ shifts the focus of the analysis from the merits of the individual employee to the necessity of the age classification as a whole. *Western Air Lines v. Criswell,* 472 U.S. at 412, 105 S.Ct. 2743. In addition, it has been held that the BFOQ defense is meant to be an extremely narrow exception to the ADEA's general prohibition. To discern the width of this extremely narrow excep-

tion, the court must apply a two-prong test. *Gately v. Massachusetts*, 2 F.3d 1221, 1225 (1st Cir.1993)(citing *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 235–36 (5th Cir.1976)). First, an employer must be able to show that the qualification is reasonably necessary to the essence of its business. *Western Air Lines v. Criswell*, 472 U.S. at 413, 105 S.Ct. 2743 (quoting *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d at 236.) Second, the employer must justify the use of age as a proxy for that qualification. *Western Air Lines v. Criswell*, 472 U.S. at 414, 105 S.Ct. 2743. This second prong can be accomplished in two ways. *Gately v. Massachusetts*, 2 F.3d at 1225. The employer can show that it had a reasonable cause to believe, that is, a factual basis for believing, that all or substantially all persons over the age qualification[ ] would be unable to perform ... the duties of the job involved." *Id.* at 1225–26 (quoting *Western Air Lines v. Criswell*, 472 U.S. at 414, 105 S.Ct. 2743). The employee can in the alternative demonstrate that it would be impossible or highly impractical to insure by individual testing that its employees will have the necessary qualifications. *Kimel v. Bd. of Regents*, 528 U.S. at 87, 120 S.Ct. 631 (quoting *Western Air Lines v. Criswell*, 472 U.S. at 422–23, 105 S.Ct. 2743).

Here, PRPA has not presented any evidence to show the factual basis it has to believe that at age 70, harbor pilots are no longer qualified to perform the duties of their job. In fact, the record is devoid of any proof tending to establish a link between the age qualification and the safety and security concerns claimed by PRPA. However, even when they don't even come close to justify age as reasonably necessary job qualification, the BFOQ issue cannot be decided at this stage of the litigation. It has been held that "the question of whether mandatory retirement age is a BFOQ is a fact-intensive inquiry." *Gately v. Massachusetts*, 2 F.3d at 1227 (citing

*Western Air Lines v. Criswell*, 472 U.S. at 417–23, 105 S.Ct. 2743); *see also Johnson v. Baltimore*, 472 U.S. at 362, 105 S.Ct. 2717; *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1216 (1st Cir.1988); *Muniz–Ramirez v. Puerto Rico Fire Servs.*, 757 F.2d 1357, 1358 (1st Cir.1985).

I have already determined that the mandatory license expiration provided for in Act 226 contravenes the ADEA as an adverse employment action motivated by age. However, a factual dispute remains as to whether PRPA can show that the age consideration in Act 226 is a BFOQ. It is for the trier of fact to determine, after the required factual findings, whether the age qualification is reasonably necessary for the essence of the job performed by harbor pilots. For these reasons, PRPA's motion for summary judgment is DENIED.

## THE EQUAL PROTECTION CLAIM

According to PRPA, summary judgment is also warranted as to Mr. Camacho's equal protection claim. Its main contention is that Mr. Camacho's license cancellation was not an act of discrimination prohibited by the Fourteenth Amendment. Defendant further claims that, since age is not a suspect classification, Act 226 must be upheld against an equal protection challenge if it satisfies rational basis scrutiny. Mr. Camacho argues on the other hand that Act 226 fails to pass constitutional muster under rational basis scrutiny because any legitimate interest the government may have in cancelling harbor pilot licenses at age 70 is not advanced by means rationally related to that end. Plaintiff further contends that Act 226 contravenes Puerto Rico's labor discrimination statute, 29 P.R. Laws. Ann. § 146 et seq. which proscribes age discrimination.

 The Fourteenth Amendment of the United States Constitution states in

pertinent part that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A plaintiff claiming that a governmental action violates the Equal Protection Clause must show that he or she was the victim of intentional discrimination. *Judge v. City of Lowell,* 160 F.3d 67, 75 (1st Cir.1998). Moreover, since age is not a suspect classification, plaintiff's equal protection claim is subject to rational basis scrutiny. *Gregory v. Ashcroft,* 501 U.S. 452, 470–71, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Under said analysis, the challenged governmental action will be sustained unless the disparate treatment of different groups or persons is so unrelated to the achievement of any legitimate interest that the only conclusion is that the action was irrational. *Id.* at 471, 111 S.Ct. 2395.

 I do not go as far as addressing the constitutionality of Act 226. I refuse to do so on two alternative grounds. First, under traditional principles of constitutional analysis, entertaining the validity of a challenged statute should be avoided whenever the construction of the statute makes it possible. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ("When the validity of an Act ... is drawn in question, and even if serious doubt of constitutionality is raised, it is a cardinal principle that [the court] will first ascertain whether construction of the statute is fairly possible by which the question may be avoided."); *see also Kent v. Dulles,* 357 U.S. 116, 129, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Ashwander v. TVA,* 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Catrone v. Mass. State Racing,* 535 F.2d 669, 671 (1st Cir.1976); *Diaz v. United States Postal Service,* 668 F.Supp. 88, 93 (D.P.R.1987), *aff'd,* 853 F.2d 5 (1st Cir.1988). Second, it has been held that the ADEA provides a comprehensive statutory remedy for age discrimination, barring suits under section 1983. *See Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364, 1366–67 (4th Cir.1989); *see also Vicenty–Martell v. E.L.A.,* 48 F.Supp.2d 81, 90 (D.P.R.1999). *Cf. Izquierdo Prieto v. Mercado Rosa,* 894 F.2d 467, 469 (1st Cir. 1990).

Examining Act 226, I avoid addressing its constitutionality by construing the statute as a mandatory retirement scheme that violates the ADEA. Thus, the constitutional question is avoided on narrower grounds. Additionally, plaintiff's equal protection claim is brought pursuant to § 1983. Since the ADEA is the statutory remedy that occupies the field of age discrimination in employment, plaintiff's section 1983—equal protection claim—is precluded. Therefore, PRPA's motion for summary judgment is GRANTED as to said claim.

## CONCLUSION

In view of the reasons stated above, I find: (1) that PRPA was Mr. Camacho's employer for purposes of the ADEA; (2) that Act 226 violates the ADEA inasmuch as it provides for the equivalent of mandatory retirement; (3) that there is a factual dispute regarding whether Act 226's consideration of age qualifies as a Bona Fide Occupational Qualification; and (4) that Plaintiff's Equal Protection claim pursuant to section 1983 is precluded. Therefore, PRPA's motion for summary judgment is GRANTED in part and DENIED in part. Triable issues are limited accordingly.

SO ORDERED.